In re Tyrone MURRAY, Debtor.

Tyrone Murray, Plaintiff,

v.

The First National Bank of Chicago, as Trustee, Defendant.

Bankruptcy No. 99–10385–DAS.
Adversary No. 99–0422.

United States Bankruptcy Court,
E.D. Pennsylvania,
Philadelphia Division.

Sept. 29, 1999.

MURRAY ("the Debtor") against THE FIRST NATIONAL BANK OF CHICAGO, as Trustee ("the Defendant"), alleging violations of the Home Ownership and Equity Protection Act ("HOEPA") amendments to the federal Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("the TILA"); the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201–1, *et seq.* (referenced here by its generic designation as a law regulating *u*nfair and *d*eceptive *a*cts and *p*ractices, *i.e.,* "UDAP"); the Pennsylvania Home Improvement Finance Act, 73 P.S. §§ 500–101, *et seq.* ("HIFA"); the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* ("ECOA"); and the Real Estate Settlement Procedure Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), arising out of a loan transaction of February 14, 1997, between the Debtor and his nondebtor wife, Diane Murray ("the Wife," with the Debtor, "the Murrays"), and the Defendant's assignor, Coastal Federal Mortgage Co. ("the Lender"). The Proceeding was heard together with a previously-filed motion of the Defendant for relief from the automatic stay ("the Motion"). Because the Defendant does not contest the presence of HOEPA/TILA violations triggering the Debtor's right to rescind the loan, the issues before us devolve to a resolution of the remedies available to the Debtor under the HOEPA assignee-liability provision, 15 U.S.C. § 1641(d), both under HOEPA/TILA and the other state and federal statutes invoked by the Debtor.

We will deny the Motion and will award the Debtor the typical relief flowing from a valid but ignored TILA rescission, *i.e.,* statutory damages of $2000 under 15 U.S.C. § 1640(a)(2)(A)(ii) for refusing the valid rescission; elimination of the Defendant's security interest supporting a secured claim which we find in this case which, given the provisions of 15 U.S.C. § 1641(d)(2), results in elimination of the Defendant's claim; and reasonable attorneys' fees and costs. We also award the

Dan Rosin, Philadelphia, PA, for debtor.

Barbara A. Fein, Fort Washington, PA, for defendant.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A. *INTRODUCTION*

The instant adversary proceeding ("the Proceeding") was instituted by TYRONE

Debtor another $2000 as statutory damages under 15 U.S.C. § 1640(a)(2)(A)(ii) for disclosure violations in the contract, against which the Defendant failed to defend itself by pleading otherwise-applicable limitations. Finally, we will award the Debtor the $1500 paid to the Creditor as the limit of his actual damages under 15 U.S.C. § 1640(a)(1). However, we conclude that 15 U.S.C. § 1641(d)(2) precludes any further relief.

## B. PROCEDURAL HISTORY AND FACTUAL HISTORY

The Debtor filed the underlying individual Chapter 13 bankruptcy case on January 11, 1999. The Defendant filed the Motion on April 15, 1999, and it was initially scheduled for a hearing on May 11, 1999. The hearing on the Motion was continued to June 8, 1999. When the parties attempted to continue it again pending the disposition of the Proceeding, filed that day, we established July 22, 1999, as the date for a consolidated hearing/trial. In the meantime the initial confirmation hearing, scheduled on June 17, 1999, was also ultimately continued to July 22, 1999, with a motion of the Chapter 13 Trustee to dismiss this case, principally because the proposed plan did not contemplate paying the Defendant in full. The instant Proceeding was, as noted, filed on June 8, 1999, naming the Defendant as the only defendant. It was tried with the Motion as scheduled on July 22, 1999.

The Debtor's testimony revealed that he is a 53–year–old man, unsophisticated in financial affairs, who expressed a poor understanding of the specific terms of the transaction and apparently misconstrued the potentially disastrous effect that this transaction could have had upon the Murrays' financial status. The Murrays reside in a home in south Philadelphia, Pennsylvania, located at 1708 Ringgold Street ("the Home"). The Debtor testified that the Home was valued at $10,000 at the time the bankruptcy petition was filed, and the Wife stated that it was encumbered only by a mortgage in the amount of approximately $4000 in favor of the Wife's sister prior to the instant transaction.

The Wife testifies that the transaction initiated from a telephone call made to her by Vision Developers ("Vision") stating that they were "in the neighborhood" and that there was money available for low-income individuals such as the Murrays to get their homes fixed by Vision. The Wife responded that the Home did indeed need repairs to be done to its inside steps, windows, and doors. Believing that all of the necessary work would be done, the Murrays agreed with Vision's principal, Ron Wohlford, to obtain a loan which Wohlford would arrange to finance this work. Wohlford ultimately advised the Murrays that they would be obliged to go to the Center City Philadelphia office of an attorney, ultimately identified as Christopher Kerns, Esquire, to sign the necessary papers to enter into the transaction.

Unbeknown to the Murrays until they arrived at Kerns' office, the loan was provided by Coastal and it contemplated paying off all of their debts, totaling approximately $10,000; including brokerage and other fees which the Debtor now claims totaled $2615.50; and leaving a balance of only about $8000 to cover for the home repairs contemplated by Vision. Ironically, Vision decided that the transaction yielded sufficient funds only to replace the stairs and fix ceilings in the kitchen and living room of the Home and that there was not enough to replace the windows and doors. The services performed by Vision were billed at $5835. This figure was lower than the funds available to the Murrays and they therefore received a check back for $2035.

The Debtor and the Wife each gave somewhat different versions of when and how they received copies of the applicable loan documents, which included a Uniform Residential Loan Application form ("the Contract"); the Truth–in–Lending Disclosure Statement ("the TILA D/S"), and the Notice of Right to Cancel the loan within

three days from the date of the Contract. The Wife testified that Kerns gave them copies of these documents on February 14, 1997. The Debtor, meanwhile, was adamant that the Wife had erred and that Wohlford gave them to the Murrays at the Home on February 24, 1997, when Vision appeared to do the work. However, both agreed that they had been given no papers relating to the transaction prior to February 14, 1997, and the Defendant was unable to produce copies of any such documentation.

The TILA D/S recites that the transaction contemplates a consumer loan in the principal amount of $19,800 with payments to be made for 15 years, with an interest rate of 14.99%. The terms of the loan provided for 179 monthly payments of $250.20 and one final balloon payment of $18,136.82. The total of payments to be made was $62,922.82. As security for the loan, the Murrays signed a mortgage on the Home in favor of the Lender.

The Murrays both testified that Kerns had not explained the loan terms to them. In particular, both believed that, if they faithfully paid the 179 payments of $250.20, the loan would be liquidated and that the balloon feature referenced a penalty applicable only if monthly payments were not remitted.

The Murrays stated that the work done by Vision was satisfactory as far as it went, but that the Home's windows and doors, not being repaired, remain serious deficiencies. They commenced the payments under the terms of the loan, and the parties agreed that they have remitted a total of $1500 to the Defendant. However, shortly after he filed this case, the Debtor, per his counsel, sent a letter of February 10, 1999, to the Defendant, as the assignee of the Contract and mortgage, of his intent to rescind the underlying loan pursuant to 15 U.S.C. § 1635 of the TILA. The Defendant admittedly did not respond in any way to this letter. The filing of the Proceeding followed.

The only witness to testify at the trial in addition to the Murrays was appraiser Robert Ludwig, who testified that the Home was worth $10,000 as of January 1999, after the repairs were completed, as contrasted with the $33,000 figure placed on the Contract as the result of an appraisal by the Lender, for which the Murrays were charged $250.

At the close of the hearing/trial the Defendant's counsel indicated that, in light of allegedly unexpected trial testimony, she might wish to call Kerns or Wohlford as witnesses. Over the Debtor's objection, by order of July 22, 1999, we give the Defendant's counsel until July 27, 1999, to attempt to reach these parties and tentatively scheduled a supplemental trial to hear their testimony on August 11, 1999. However, upon advice that the Defendant did not choose to call these persons as witnesses, we entered an order of July 30, 1999, which provided that the Debtors' opening brief would be submitted by August 16, 1999, the Defendant would file its opposing brief by August 30, 1999, and the Debtor would file reply brief by September 6, 1999, which, being a holiday, actually referenced September 7, 1999. Both parties complied with these deadlines in rendering their respective submissions.

In his opening brief, the Debtor asserts a barrage of claims under several federal and state statutes. At great length he detailed several theories pursuant to which this court should conclude that the transaction must be considered a HOEPA loan and was subject to rescission and the consequences therefrom. In addition, he goes on at some length to assert claims for actual damages under TILA, actual damages under UDAP for alleged violations of the HIFA, and other claims for statutory and actual damages under ECOA and RESPA.

The Defendant, in its brief, concedes that the loan is a HOEPA loan; that material violations of TILA were present, particularly the failure to provide the pre-closing disclosures required by HOEPA,

*see* 15 U.S.C. § 1639(b), 12 C.F.R. § 226.332(c); and that rescission is therefore justified, which the Defendant envisions as only having the effect of eliminating any claim of the Defendant and entitling the Murrays to a refund of their $1500 payments made. The Defendant explains this position by arguing that it cannot be held liable for the statutory damages under TILA because it was not the original contractor or lender, but rather is a holder in due course ("HDC") of the Contract. On similar grounds, the Defendant argues that the Debtor is not entitled to statutory damages under the TILA, nor for any damages under UDAP, HIFA, ECOA, or RESPA.

In light of the Defendant's concessions on this point, we need not further reference the Debtor's elaborate arguments supporting the contention that the transaction at issue is a HOEPA loan contract. However, the Debtor further argues that he is entitled to receive statutory damages of $2000 in light of the disclosure violations in the TILA D/S. *See* 15 U.S.C. § 1640(a)(2)(A)(i), (iii). While the one-year limitation period of 15 U.S.C. § 1640(e) is acknowledged, the Debtor argues that limitations is an affirmative defense which the Defendant waived by not pleading.

Further, the Debtor argues that he is entitled to a separate $2000 recovery in light of the Defendant's failure to properly respond to his now-acknowledged valid letter/notice of rescission. He asserts that the Defendant, by failing to honor the Debtor's notice of rescission, exposed itself to an additional statutory damage award of $2000. Also, the Debtor makes a claim for actual damages under the TILA, 15 U.S.C. § 1640(a)(1). The Amended Complaint measures such damages at $19,800, the amount borrowed by the Murrays in the transaction.

Next, the Debtor asserts that under UDAP, the Defendant should be liable to him UDAP for treble damages and punitive damages in some undesignated amount due to the deceptive acts that were used to encourage the Murrays to enter the transaction. Although the Debtor never quantifies his UDAP damages, he clarifies his UDAP claim by pointing out that all he and his Wife wanted was a $10,000 loan that would be paid off in its entirety with equal installments over a specific number of years in order to make repairs to the stairs, windows, and doors of the Home. What they received was repairs of only some of the Home's deficiencies, and a huge loan which paid off a number of unsecured loans, municipal liens, and a mortgage held by a friendly mortgagor.

Other deceptive acts the Debtor argues were that he and his wife were misled as to the meaning of the balloon payment and that they were obliged to pay a total of $1584 to a mortgage broker unknown to them, American Mortgage Network ("AMN"), as well as numerous other charges of which they were unaware. In addition the Debtor contends that the loan is within the scope of the HIFA, the terms of which was violated through the charging of illegal fees and making illegal loans. The underlying basis of these claims is the Debtor's assertion that the loan is actually a home improvement contract, regulated by HIFA, but was illegally written as a loan pursuant to a practice known as "dragging the body," citing *In re Brown,* 134 B.R. 134 (Bankr.E.D.Pa.1991). The Debtor contends that there were numerous charges prohibited by HIFA which were imposed. As a result of these acts, the Debtor argues that he suffered actual damages of $16,522.76 chargeable under UDAP, because a violation of HIFA is a *per se* violation of UDAP, citing *In re Russell,* 72 B.R. 855, 869–71 (Bankr. E.D.Pa.1987).

The Debtor next argues that the loan requested by the Murrays was $10,000 for home improvements only and that the loan received by them was a $19,800 consolidation loan. The Debtor posits that these circumstances entitle him to $9,800 in actual damages and $10,000 in punitive damages due to the violations under ECOA,

citing *Newton v. United Companies Financial Corp.*, 24 F.Supp.2d 444, 457–62 (E.D.Pa.1998). Finally, the Debtor argues that he is entitled to treble damages in the amount of $4,752 under 12 U.S.C. § 2607(d)(2) of RESPA, for being charged illegal brokerage fees in the amount of $1,584 by AMN.

The Debtor, in his reply brief, addressing the Defendant's HDC argument, invokes 15 U.S.C. § 1641, which he notes was appended to TILA to enforce HOEPA as to assignees. The Debtor does not further explain why an assignee or HDC of a mortgage should be held liable for its predecessor's acts under the other state and federal statutes under which he claimed that he was entitled to damages, *i.e.,* UDAP, ECOA, and RESPA, except for an argument that the HIFA, like § 1641(d), requires the assignee to prove factors establishing HDC status the burdens of which the Defendant, having not presented any evidence, failed to carry.

## C. *DISCUSSION*

Since the Defendant concedes that HOEPA has been violated and the Debtor is entitled to rescission of the loan transaction, but denies liability for numerous claims cited by the Debtor because it is a HDC of the Contract as opposed to a participant in the original transaction, the principal statutory authority to which we look to resolve the matters remaining in dispute is 15 U.S.C. § 1641(d), which addresses the liability of assignees of HOEPA loans. That subsection of § 1641 provides as follows:

(d) *Rights upon assignment of certain mortgages.*

(1) Any person who purchases or is otherwise assigned a mortgage referred to in [HOEPA] shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage, unless the purchaser or assignee demonstrates, by a preponderance of the evidence, that a reasonable person exercising ordinary due diligence, could not determine, based on the documentation required by this title, the itemization of the amount financed, and other disclosure of disbursements that the mortgage was a mortgage referred to in [HOEPA]. The preceding sentence does not affect rights of a consumer under subsection (1), (b), or (c) of this section or any other provision of this title.

(2) Notwithstanding any other provision of law, relief provided as a result of any action made permissible by paragraph (1) may not exceed—

(A) with respect to actions based upon a violation of this title, the amount specified in section 130; and

(B) with respect to all other causes of action, the sum of—

(i) the amount of all remaining indebtedness; and

(ii) the total amount paid by the consumer in connection with the transaction.

(3) The amount of damages that may be awarded under paragraph (2)(B) shall be reduced by the amount of any damages awarded under paragraph (2)(A). . . .

There are two aspects of this statutory provision which are different from provisions of the TILA which apply to assignees of non-HOEPA contracts. First, § 1641(d)(1) eliminates HDC defenses entirely as to all claims asserted by the consumer under TILA or other laws, unless the assignee proves, by a preponderance of the evidence, that it could not determine that the loan was a HOEPA loan. This law is distinct from the provisions of §§ 1641(a) and (e) which do not impose TILA damages on assignees unless the violations are apparent on the face of the instruments. Second, §§ 1641(d)(c) and (3) limit the assignee's liability to, essentially, the greater of (1) the applicable TILA damages or (2) elimination of loan and recovery of all payments made.

This latter alternative limits damages similar to the Federal Trade Commission Rule Conserving Preservation of Consumers' Claims and Defenses ("the HDC Rule"), 16 C.F.R. § 433.2, which, while similarly eliminating the HDC As a defense for an assignee of a consumer credit contract, also similarly limits the assignee's liability to the "amounts paid" by the consumer.

The parties' agreement that the instant transaction is a HOEPA loan renders § 1641(d) applicable. The Defendant's HDC defense to all of the Debtor's claims is therefore eliminated by § 1641(d)(1), although its total liability for all of these claims, under federal and state law, is limited by the terms of §§ 1641(d)(2) and (d)(3).

■ In two recent decisions of this court, *In re Williams,* 232 B.R. 629, 643 (Bankr.E.D.Pa.), *aff'd as corrected,* 237 B.R. 590 (E.D.Pa.1999) [1]; and *In re Ralls,* 230 B.R. 508, 522–24 (Bankr.E.D.Pa.1999), we determined the remedies generally available under TILA to debtors whose valid rescissions of HOEPA loans were resisted by their Lenders and/or assignees. They are (1) termination of the creditor's security interest; (2) statutory damages for failing to properly respond to the recission demand; (3) a penalty measured by at least recoupment against the remaining unsecured claim on account of the original TILA disclosure violations; (4) elimination of all finance charges; and (5) where equitable to do so, elimination of the debtor's entire obligation to the creditor and (6) recovery of all payments made; and (7) recovery of reasonable attorneys' fees and costs by the successful debtor's counsel.

■ We agree with the Debtor's contention that, by failing to prove (or argue) the defense of the one-year statute of limi-

tations provided in 15 U.S.C. § 1640(e), the Defendant has waived this defense. *See In re Frascatore,* 98 B.R. 710, 718 (Bankr.E.D.Pa.1989); and *In re Gurst,* 79 B.R. 969, 979 (Bankr.E.D.Pa.1987); *appeals dismissed,* C.A. No. 88–2092 (E.D.Pa.), *aff'd,* 866 F.2d 1410 (3d Cir. 1988); and 88 B.R. 57 (E.D.Pa.) *aff'd,* 866 F.2d 1410 (3d Cir.1988); and 88 B.R. 57 (E.D.Pa.1988). Since the finance charge imposed in the transaction was $43,742.62, *see* pages 730–31 and page 734 n. 1 *supra,* the Defendant is liable for two statutory damage awards of $2,000 under 15 U.S.C. § 1640(a)(2)(A)(iii), or $4000.

■ We further agree with the Debtor's assertion that he is entitled to actual damages under the TILA for subjection to additional charges to which the Murrays never agreed and of which they creditably testified that they were justifiably never unaware, notably the $1584 payable to AMN and a $395 fee to Kerns' law firm. Other charges, which, with the foregoing, total $2615.50, are questionable as well.

■ Imposition of "unexplained, inscrutable, and improperly disclosed" charges such as those referenced as chargeable to the Murrays under the Contract trigger actual TILA damages, pursuant to 15 U.S.C. § 1640(a)(1). *See In re Russell,* 72 B.R. 855, 861–64 (Bankr. E.D.Pa.1987). However, the Murrays only paid $1500 to the Creditor towards the obligation. If we eliminate entirely the Murrays' obligation to the Defendant, as we do, and allow them to recover their $1500 total payments made, it is difficult to see how the Murrays could be said to have suffered any actual damages in excess of $1500 as a result of this transaction. Thus, the Debtor's actual TILA damages under § 1640(a)(1) are fixed at $1500.

---

1. Respectfully, "the correction" made by the District Court to the award of statutory damages in the second of two transactions of the *Williams* debtor, limiting charges to the finance charges *paid* by the debtor as opposed to those *charged* to him, 237 B.R. 590, 599-

600 is not only contrary to the TILA statute but also is inconsistent with our computation of statutory damages in the connection with the *Williams* debtor's first transaction in the same decision, which the District Court affirmed.

We find that the remedies other than monetary damages available to the Debtor as a result of the Defendant's failure to properly acknowledge his valid recision of the Contract, under 15 U.S.C. § 1635(b), should eliminate the Defendant's claim. In the absence of its security interest, which must be terminated as a result of the valid recision under § 1635(b), the Defendant is left with no better than an unsecured claim against the Debtor. The Debtor's Chapter 13 Plan calls for total payments of but $300. Unsecured claimants are to be paid *pro rata* from a portion of this sum but are not to receive more than one (1%) present of their allowed claim.

The Debtor attempts to argue that we should preserve the Creditor's unsecured claim in as large an amount as possible for the sole purpose of making a larger § 1641(d)(2) calculation in his favor. Putting aside the issue of possible residual liability of the Wife, who is neither a debtor nor a plaintiff in the Proceeding and whose rights are therefore not at issue,[2] it does not appear equitable to present the Defendant's claim only to serve as the basis for imposition of additional liability against the Defendant. If we did preserve it, the purpose of § 1641(d)(2) of limiting a consumer's claim against an assignee to the amount of the assignee's claim against the consumer would appear to justify the Defendant's offsetting recoupment in any event. The purpose of § 1641(b)(2), like the similar HDC Rule provision, appears to us to be to prevent a consumer's receiving any such windfall due to the status of a violations victim. We therefore deem it appropriate, in the exercise of our discretion in measuring out the appropriate remedies under § 1635(b), to declare that the Debtor's obligation to the Defendant is wiped out entirely under § 1635(b).

The foregoing rulings, by effect of § 1641(d)(2), eliminate all further claims of the Debtor under state and federal law against the Defendant arising out of this transaction. We have found that the Debtor is entitled to $5500 in damages under §§ 1640, 1641(d)(2)(A). We have further considered that the remaining indebtedness of the Debtor to the Defendant under § 1641(d)(2)(B)(i) is zero, and the total amount paid by the Debtor to the Defendant, per § 1641(d)(2)(B)(ii), is agreed to be $1500. We note that, § 1641(d)(3) requires that this figure ($1500) be reduced by the $5500 awarded under § 1641(d)(2)(A), canceling out any additional § 1641(d)(2) liability of the Defendant to the Debtor.

The only other element of damages allowable to the Debtor's is his recovery of reasonable attorneys' fees and costs. Since the Debtor's counsel appears to recognize, in his reply brief, that the foregoing computation under § 1641 is likely, it is questionable whether any demand under § 1640(a)(3) for time spent on the remaining federal and state claims would be deemed reasonable.

Furthermore, there are other routes by which the result of total denial of the Debtor's remaining state and federal claims could be reached. In *In re Steinbrecher*, 110 B.R. 155, 159–60 (Bankr. E.D.Pa.1990), Judge Fox of this court held that a valid TILA rescission eliminates any claim for actual damages under UDAP and the HIFA. *See Brown, supra,* 134 B.R. at 146 (accepting this reasoning where the state law claims and the TILA claims "overlap"). *But cf. In re Milbourne,* 108 B.R. 522, 530–33 (Bankr.E.D.Pa.1989). It is difficult to conceive what actual damages the Debtor here could claim in light of our decision that his liability under the Contract is eliminated, he recovers all of the $1500 payments made, and he receives $4000 TILA statutory damages in addition.

Damages under ECOA are also triggered only by actual damages. *See* 15 U.S.C. § 1691e(b). It is unclear to us whether any ECOA claims could arise here

---

**2.** However, we think that the Defendant could effectively argue that the full recovery allowable herein to the Debtor would eliminate any claim of the Wife, presumably represented by the same counsel. *See In re Mosley,* 85 B.R. 942, 949 (Bankr.E.D.Pa.1988).

"with respect to [the] mortgage." 15 U.S.C. § 1641(d)(1). Rather, they appear to us to arise from the distinct decision of Coastal regarding the extent of credit to be offered to the Murrays. There is no allegation that the Defendant "participated" in Coastal's decision to offer credit to the Murrays, as is normally necessary to trigger ECOA assignee liability. *See* 15 U.S.C. §§ 1691(a), 1691a(e). *Compare Newton, supra,* 24 F.Supp.2d at 457–62 (successful ECOA claim asserted only against the original creditors in loan transactions).

RESPA liability is arguably statutory and may not require proof of actual damages. *See* 12 U.S.C. § 2607(d)(2). However, there is no evidence at all regarding the purpose of the payments to AMN and hence whether they could properly be characterized, when the roles of all of the parties involved in the loan are identified, as "kickbacks," "split charges," or "unearned fees." *See* 15 U.S.C. §§ 2607(a), (b), (c). *Compare Newton, supra,* 24 F.Supp.2d at 463 (RESPA liability denied where compensated broker's role in the transaction was unclear). The RESPA Regulations define a "lender" as a secured creditor "named in the debt obligation and document creating the loan." 24 C.F.R. § 3500.2(b). This definition would not include the Defendant, as a subsequent assignee. It is unclear that § 1641(d)(1) could ever sweep such liability onto an assignee

Irrespective of how these questions would be answered in the absence of the § 1641(d)(2) liability cap, these non-HOEPA/TILA claims are definitely eliminated in the face of the cap. We therefore have no choice but to limit the Defendant's liability in the instant transaction to $5500.

### D. *CONCLUSION*

We will enter an order consistent with the foregoing conclusions regarding the Proceeding, but also making certain that any claims of the Standing Chapter 13 Trustee to the Debtor's recovery are preserved; that the attorneys' fees and costs issue is, if possible, resolved between the parties; and that the confirmation process in the Debtor's case goes forward. *Accord, Williams,* 232 B.R. at 644; and *Ralls, supra,* 230 B.R. at 524. Since the Proceeding eliminates the Defendant's claim entirely, the Motion must be denied.

### *ORDER*

AND NOW, this 29th day of September, 1999, after the hearing on the Motion of the Defendant for relief from the automatic stay ("the Motion") and the trial of the above-captioned proceeding ("the Proceeding") on July 28, 1999, upon advice that the parties both consider that record to be complete and upon consideration of the parties' respective post-hearing/trial submissions, it is hereby ORDERED AND DECREED as follows:

1. Judgment is entered in the Proceeding in favor of TYRONE MURRAY ("the Debtor") and against THE FIRST NATIONAL BANK OF CHICAGO, AS TRUSTEE ("the Defendant") in substantial part, as described in the foregoing Opinion.

2. It is DECLARED that the Debtor properly exercised his right to rescind the parties' loan transaction of February 14, 1997, and that any liability of the Debtor to the Defendant is thereby eliminated. Accordingly, the Defendant is forthwith directed to satisfy any remaining mortgage which it had previously taken against the Debtor's interest in his residential real estate at 1708 Ringgold Street, Philadelphia, Pennsylvania 19145.

3. The Defendant shall forthwith pay the sum of $5500 to Edward Sparkman, the Standing Chapter 13 Trustee ("the Trustee"), as damages pursuant to 15 U.S.C. §§ 1640(a)(1), (a)(2)(A)(iii). The Trustee shall determine whether any of this sum may be claimed as part of the Debtor's exemptions, and, if it may be, he shall forward this sum to the Debtor forthwith.

4. The parties are urged to attempt to agree upon reasonable attorneys' fees and costs which are due to the Debtor's counsel, pursuant to 15 U.S.C. § 1640(a)(3). If

this matter is not resolved within fifteen (15) days, the Debtor's counsel may, within thirty (30) days of this order, file a motion requesting a court award of such fees, said motion to be procedurally in conformity with Local Bankruptcy Rule 2016–3. However, if the Debtor's counsel has made a reasonable request for such fees which is refused, said counsel may recover compensation for time spent in preparing the fee application.

5. The Motion in the Debtor's main bankruptcy case is DENIED.

6. Since no amendments appear necessary to the Debtor's Chapter 13 Plan ("the Plan") in light of this decision, the hearing on confirmation of the Plan in the Debtor's main bankruptcy case is promptly rescheduled on

THURSDAY, OCTOBER 7, 1999, AT 9:30 A.M. and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.