PUBLISH

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2 2000
THOMAS K. KAHN
CLERK

_____

No. 98-6786

_____

D. C. Docket No. 96-00862-CV-D-N

CLEOPATRA JONES, on behalf of herself and
all others similarly situated, DELOIS PRITCHETT,
on behalf of herself and all others similarly situated,

Plaintiffs-Appellants,

versus

BILL HEARD CHEVROLET, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(June 2, 2000)**

Before EDMONDSON and HULL, Circuit Judges, and WOOD[*], Senior Circuit
Judge.

HULL, Circuit Judge:

_____

[*] Honorable Harlington Wood, Jr., Senior U.S. Circuit Judge for the Seventh Circuit, sitting
by designation.

Plaintiffs-Appellants Cleopatra Jones and Delois Pritchett ("Plaintiffs") brought this action against Defendant-Appellee Bill Heard Chevrolet, Inc. ("Heard Chevrolet"), for alleged violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a)(2)(B)(iii), and TILA's implementing regulation, Regulation Z, 12 C.F.R. § 226.18(c)(1)(iii). Plaintiffs appeal the district court's order granting summary judgment for Defendant Heard Chevrolet on Plaintiffs' TILA claims. After review, we reverse.

## I. BACKGROUND

Plaintiffs instituted separate fraud actions in Alabama state court against Defendant Heard Chevrolet based on inaccurate disclosures during their purchases of automobiles and extended service contracts. Heard Chevrolet removed both actions to federal court, where they were consolidated. Plaintiffs then filed a joint amended complaint, with Count One containing the fraud claims under state law. The subsequent dismissals of these fraud claims are not involved in this appeal. This appeal addresses only Count Two which alleged TILA and Regulation Z violations based on Heard Chevrolet's inaccurate disclosure that the entire fee for Plaintiffs' extended service contracts was paid to third party General Motors. In fact, most of the fee was retained by the dealership. We first review the transactions regarding those contracts.

2

## A.    The Extended Service Contracts

In 1995, Plaintiffs purchased automobiles from Defendant Heard Chevrolet and extended service contracts from General Motors through Heard Chevrolet. To finance these purchases, Plaintiffs entered into retail installment contracts ("RICs") with Heard Chevrolet. Specifically, Plaintiff Jones purchased a 1993 Geo Storm from Heard Chevrolet and executed her RIC on February 27, 1995. As part of the purchase, Jones paid $2,495 for an extended service contract. Heard Chevrolet itemized the amount paid and being financed, on the RIC, as follows:

### Itemization of Amount Financed

1 Cash Price (including any accessories, services, and taxes)       $ 9795.45
2 Total Downpayment . . .       $   800.00
3 Unpaid Balance of Cash Price (1 minus 2)       $ 8995.45
4 Other Charges Including Amounts Paid to Others on Your Behalf:
   . . .
    H Other Charges (Seller must identify who will receive
      payment and describe purpose)
      to  GENERAL MOTORS 12/12  for ___
      SERVICE CONTRACT       $2495.00

Heard Chevrolet concedes that its disclosure in this "Itemization" was inaccurate regarding the amount Heard Chevrolet, as seller, paid to General Motors on Jones's behalf for the extended service contract.[1] Heard Chevrolet did not pay

---

[1]The consumer is not automatically entitled to an itemization of the amount financed unless a written request for it is made. See § 1638(a)(2)(B); 12 C.F.R. § 226.18(c)(2). The creditor is allowed to skip this stage and simply provide the itemization of the amount financed without being asked for it. See 12 C.F.R. Pt. 226, Supp. I § 18(c)(1). This appears to be what Heard

$2495 to General Motors as represented. Heard Chevrolet paid General Motors only $290 and retained an "upcharge" or mark-up of $2,205 for itself.[2] In addition, Heard Chevrolet concedes that it did not disclose to Jones that it was retaining any portion of the amount listed as paid to General Motors.

Plaintiff Pritchett's RIC contained a similar misrepresentation when she purchased a 1991 Pontiac Grand Prix from Heard Chevrolet on May 9, 1995. As part of the purchase, Pritchett paid $765 for her extended service contract. Heard Chevrolet inaccurately represented in Pritchett's RIC that Heard Chevrolet had paid General Motors $765 for her service contract. In fact, Heard Chevrolet retained a substantial portion of that $765.

## B. District Court Proceedings

The district court granted summary judgment for Defendant Heard Chevrolet on Plaintiffs' TILA claims. Heard Chevrolet primarily argued that regardless of whether the dealership violated TILA's disclosure provisions, the "good faith" defense in TILA insulated Heard Chevrolet from liability. See 15 U.S.C. § 1640(f). In granting summary judgment, the district court agreed that the "good

---

Chevrolet did. It furnished the itemization, and the itemization inaccurately disclosed the amount paid to General Motors.

[2]An "upcharge" is the term used to refer to the amount a dealership retains when it offers a third party service, such as a maintenance or service contract.

4

faith" defense in TILA protected Heard Chevrolet from liability. The district court declined to decide whether Heard Chevrolet actually violated TILA.

Both Plaintiffs timely appealed the adverse judgment on their TILA claims, but only Plaintiff Jones has pursued the appeal. Although both Jones's and Pritchett's names appear on the notice of appeal and on the cover of Plaintiffs-Appellants' brief, that brief recites the facts about only Jones's purchase and discusses only Jones's claims. Plaintiffs-Appellants' brief contains no mention of Pritchett's transaction or her claim. Defendant-Appellee Heard Chevrolet's response brief points out that Pritchett's claims are thus abandoned. Plaintiffs-Appellants' reply brief does not contest that argument. At oral argument, only Jones's claims were mentioned. Therefore, we find that Pritchett's claims are abandoned. See Atkins v. Singletary, 965 F.2d 952, 955 n.1 (11th Cir. 1992) (determining appellants have abandoned claims not addressed on appeal); Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (stating issue abandoned where party did not make any arguments on the merits as to that issue in its initial or reply brief). Thus, we now consider only Jones's TILA claim.

## II.  STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, applying the same standards used by the district court. See Killinger v. Samford Univ., 113 F.3d 196, 198 (11th Cir. 1997). For summary judgment purposes, the facts are viewed in the light most favorable to the nonmoving party. See Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999).

### III. DISCUSSION

### A. TILA Claim

The district court found that it "need not decide whether the disclosure requirements are mandatory or permissive" and that "[t]his is because TILA provides a 'good faith' defense, which, Defendant argues, insulates it from liability in this case." We agree, however, with Plaintiff Jones's arguments that the determination of whether a TILA violation occurred is necessary before properly analyzing Heard Chevrolet's "good faith" defense. In this particular case, the application of the "good faith" defense is intertwined with a determination of whether TILA had clear mandatory disclosure requirements for payments to third parties. Therefore, we first review whether Heard Chevrolet violated TILA and

Regulation Z in its inaccurate disclosure regarding the amount it paid to General

Motors.[3]

The language of TILA's section 1638(a)(2)(B)(iii) is clear and

straightforward. 15 U.S.C. § 1638(a)(2)(B)(iii). Section 1638(a)(2)(B)(iii)

explicitly requires that creditors "shall disclose" in writing "each amount that is . . .

paid to third persons by the creditor on the consumer's behalf, together with an

identification of . . . the third person," as follows:

> **(a) Required disclosures by creditor**
> For each consumer credit transaction other than under an open end
> credit plan, <u>the creditor shall disclose each of the following items</u>, to
> the extent applicable:
> * * *
> **(2)(B)** In conjunction with the disclosure of the amount financed, a
> creditor shall provide a statement of the consumer's right to obtain,
> upon a written request, <u>a written itemization of the amount financed</u>. .
> . . Upon receiving an affirmative indication, the creditor shall
> provide, at the time other disclosures are required to be furnished, a
> written itemization of the amount financed. For the purposes of this

---

[3]We are able to reach this issue – whether Defendant Heard Chevrolet's representation about the amount paid to General Motors violated TILA and Regulation Z – because it was fully briefed in the district court, concerns only a pure question of law as the parties do not dispute the relevant facts, and "its resolution is beyond any doubt." See Singleton v. Wulff, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases. . . . [Federal appellate courts are] justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt."); Macklin v. Singletary, 24 F.3d 1307, 1312 (11th Cir. 1994) (finding appellate court may consider an issue not ruled upon by the district court where it involved a pure question of law); see also Green v. Levis Motors, Inc., 179 F.3d 286, 293 (5th Cir. 1999) ("The issue [whether disclosure is required by TILA] is one of pure law . . . [and] the proper resolution of this question is . . . beyond any doubt." (quotations omitted)).

subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:

\* \* \*

**(iii)** <u>each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person</u>.

15 U.S.C. § 1638(a)(2)(B)(iii) (emphasis added). Similarly, section 226.18(c)(1)(iii) of Regulation Z provides that a creditor shall disclose "[a]ny amounts paid to other persons by the creditor on the consumer's behalf. The creditor shall identify those persons." 12 C.F.R. § 226.18(c)(1)(iii).[4]

Heard Chevrolet's itemization disclosed that it paid $2,495 to General Motors. In fact it paid only $290. Heard Chevrolet also did not disclose that it pocketed a significant amount of the fee as an upcharge. Thus, we conclude that

---

[4]Congress enacted the TILA to promote the "informed use of credit" through a "meaningful disclosure of credit terms" to customers. 15 U.S.C. § 1601. Congress delegated authority to the Federal Reserve Board ("FRB") to promulgate regulations implementing TILA and to issue official staff interpretations of those regulations. The implementing regulations are commonly referred to as Regulation Z, 12 C.F.R. Part 226. See 15 U.S.C. § 1604(a); Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 559-60 (1980).

When Plaintiff Jones executed her RIC in February 1995, the relevant regulatory provisions were section 226.18(c)(iii) of Regulation Z and 12 C.F.R. Pt. 226, App. H-3 ("Model Form H-3"). Model Form H-3 provides for several ways to itemize the "amount financed" including a subsection entitled "Amount paid to others on your behalf," as follows:

Amount paid to others on your behalf
$ _____ to [public officials] [credit bureau] [appraiser] [insurance company]
$ _____ to [name of another creditor]
$ _____ to [other]
$ _____ Prepaid finance charge

12 C.F.R. Pt. 226, App. H-3.

Heard Chevrolet's inaccurate disclosures on Jones's RIC violated both TILA and Regulation Z.[5]

We also reject Heard Chevrolet's contention that the commentaries, issued by the Federal Reserve Board ("FRB"), introduced any ambiguity to Heard Chevrolet's clear statutory obligation to disclose accurately the amount paid to others. We review the commentaries and then Heard Chevrolet's arguments about them.

In December 1995, several months after Plaintiff Jones purchased her vehicle, the FRB proposed an Official Staff Commentary ("Proposed Commentary") pertaining to Regulation Z, 12 C.F.R. § 226(c)(1)(iii).[6] The FRB

---

[5]At the time of Jones's transaction in February 1995, the only two federal court decisions on this issue had denied defendant dealerships' Rule 12(b)(6) motions to dismiss, finding that the dealerships' allegedly disclosing inaccurately the amount paid to a third party for an extended service or warranty contract stated a cause of action for a TILA violation. See Shields v. Lefta, 888 F. Supp. 894, 896 (N.D. Ill. 1995) ("Some of the money went into the pocket of the dealership. Of course there is nothing wrong with money going into the pocket of a car dealership on a car purchase, but plaintiffs allege misrepresentation as to the amount going into the pocket of the dealership versus being paid out to others."); Cirone-Shadow v. Union-Nissan, Inc., No. 94-C-6723 (N.D. Ill. Feb. 3, 1995) (noting dealership paid to Autoright only a small portion of the $800 itemized as paid to Autoright for an extended warranty or service contract).

[6]The Proposed Commentary stated:
Creditor-imposed charges added to amounts paid to others. A creditor that offers an item for sale in both cash and credit transactions sometimes adds an amount (often referred to as an "upcharge") to a fee charged to a consumer by a third party for a service (such as for a maintenance or service contract) that is payable in an equal amount in both types of transactions, and retains that amount. At its option, the credit may list the total charge (including the portion retained by it) as an amount paid to others, or it may choose to reflect the amounts in the manner in which they were actually paid to or retained by the appropriate parties.

9

never approved the Proposed Commentary. Subsequently, the FRB did adopt the following Official Staff Commentary ("Revised Commentary") on April 4, 1996. This Revised Commentary provides that "the creditor may reflect that the creditor has retained a portion of the amount paid to others," as follows:

> Charges added to amounts paid to others. A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In the credit transaction, the amount is retained by the creditor. Given the flexibility permitted in meeting the requirements of the amount financed itemization (see the commentary to § 226.18(c)), the creditor in such cases may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

61 Fed. Reg. 14952, 14956 (April 4, 1996) (codified at 12 C.F.R. Pt. 226, Supp. I § 18(c)(1)(iii)(2)). On the same day, the FRB also issued supplementary information to the Revised Commentary explaining why this officially adopted Revised Commentary is more restrictive than the previous Proposed Commentary, as follows:

> As proposed, the comment stated that a creditor could include in the "amount paid to others," any amount retained by the creditor without itemizing or noting this fact. Concern is raised about the appropriateness of such treatment under the TILA where a substantial portion of a fee categorized as "amounts paid to others," is in fact

---

60 Fed. Reg. 62764, 62769 (Dec. 7, 1995).

10

retained by the creditor.  Accordingly, a sentence has been added to clarify that given the flexibility in itemizing the amount financed, creditors may reflect that they have retained a portion of the "amount paid to others" rather than disclosing the specific amount retained.

61 Fed. Reg. at 14954.

Heard Chevrolet argues that the Revised Commentary's use of the permissive words "may" and "could" provides creditors with the discretion to choose whether or not to disclose the amount, or even the existence, of an upcharge.  We reject that contention because we agree with two other circuits' conclusions that the Revised Commentary does not abrogate or affect in any way the clear statutory requirement in TILA's section 1638(a)(2)(B)(iii) that the creditor shall disclose accurately the amount paid to third parties.  See Green v. Levis Motors, Inc., 179 F.3d 286, 293-94 (5th Cir. 1999); Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285-86 (7th Cir. 1997).  As our sister circuits concluded, the Revised Commentary only clarifies that the creditor has the option of disclosing that it retained a portion of the "amount paid to others," rather than disclosing the specific amount retained.  See Green, 179 F.3d at 293-94; Gibson, 112 F.3d at 285-86.  The Revised Commentary does not have as an option the failure to disclose at all the fact that an amount was retained.  See Green, 179 F.3d at 293-94; Gibson, 112 F.3d at 285-86.

11

Specifically, we agree with the Fifth Circuit's analysis in <u>Green v. Levis</u>

<u>Motors</u>, which states:

> [R]ead in the context of the [commentary's] entire paragraph and the
> accompanying explanation . . . it is clear that the inclusion of
> permissive terms was not intended to leave open the option of saying
> absolutely nothing at all about the existence of an upcharge.  Instead,
> the FRB undoubtedly meant to give creditors the option of either
> separately itemizing the actual amount paid to third parties or
> reporting one lump sum (made up of the actual amount paid to a third
> party and the upcharge) with an accompanying notation that the
> creditor might have included an upcharge.

<u>Green v. Levis Motors, Inc.</u>, 179 F.3d 286, 294 (5th Cir. 1999).  The Seventh

Circuit arrived at the same conclusion in <u>Gibson v. Bob Watson Chevrolet-Geo,</u>

<u>Inc</u>., stating:

> [A]s to the other possible violation, the failure to itemize accurately,
> the defendants contend that the words "may" and "could" show that
> they can if they want disclose that they are retaining some of the fee,
> but that they are not required to do so.  In other words, they read the
> commentary to say: "You may conceal the fact that you are pocketing
> part of the fee that is ostensibly for a third party, but if you are a
> commercial saint and would <u>prefer</u> to tell the truth, you may do that
> too."  So interpreted, however, the commentary not only would be
> preposterous; it would contradict the statute.  The only sensible
> reading of the commentary is as authorizing the dealer to disclose only
> the fact that he is retaining a portion of the charge, rather than the
> exact amount of the retention.

<u>Gibson</u>, 112 F.3d at 285-86.

Heard Chevrolet's interpretation of the Revised Commentary contradicts,

and in effect would abrogate, the clear statutory language of TILA's section

1638(a)(2)(B)(iii), Regulation Z's section 226.18(c)(1)(iii), and Heard Chevrolet's clear statutory duty to disclose accurately the amount it paid to General Motors. Our conclusion is also supported by the supplementary information to the Revised Commentary which states an intent to clarify that creditors have a new option under the Revised Commentary: creditors "may reflect that they have retained a portion of the 'amount paid to others,' rather than disclosing the specific amount retained." 61 Fed. Reg. at 14954. Significantly, the supplementary information, like the Revised Commentary, does not discuss as an option the total concealment of the fact that an amount was retained. None of the FRB's commentaries states that a creditor can inaccurately disclose the amount paid to others.

After review, we find that Heard Chevrolet's disclosure – that it paid $2,495 to General Motors when it paid only $290 – was inaccurate and violated both TILA and Regulation Z. See 15 U.S.C. § 1638(a)(2)(B)(iii); 12 C.F.R. § 226.18(c)(1)(iii).[7]

_____

[7]We emphasize that there is no issue in this case regarding materiality of the disclosure, and thus we do not discuss it. Additionally, Heard Chevrolet's use of the Model Form H-3 does not shield the dealership from TILA liability. Section 1604(b) states, "A creditor or lessor shall be deemed to be in compliance with the disclosure provisions of this subchapter with respect to other than numerical disclosures if the creditor or lessor (1) uses any appropriate model form or clause published by the Board." 15 U.S.C. § 1604(b) (emphasis added). Conformity with the layout in the model forms does not excuse substantive misrepresentations as to the numerical amounts listed within the forms. See Gibson, 112 F.3d at 286 ("So the H-3 defense fails too – and for the further and independent reason that the safe harbor is unavailable to disclosures required to be given numerically, such as disclosure of the amount financed. 15 U.S.C. § 1604(b)."). Reduced to its essence, Heard Chevrolet's argument is that as long as it used the

**B. "Good Faith" Defense**

Even if these violations occurred, Defendant Heard Chevrolet contends that the "good faith" defense set forth in TILA's section 1640(f) shelters it from liability. 15 U.S.C. § 1640(f). Section 1640(f) provides that no liability shall apply if the dealership acts in conformity with "any rule, regulation, or interpretation thereof by the Board," as follows:

> No provision of this section . . . imposing any liability shall apply to any act done or omitted in good faith in conformity with any rule, regulation, or interpretation thereof by the Board . . . notwithstanding that after such act or omission has occurred, such rule, regulation, interpretation, or approval is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 U.S.C. § 1640(f). Heard Chevrolet contends that it complied in good faith with the FRB's commentaries and thus is not liable. The insurmountable obstacle for Heard Chevrolet is that the Proposed Commentary and Revised Commentary did not exist until <u>after</u> Jones purchased her vehicle and extended service contract in February 1995. Thus, Heard Chevrolet could not have relied on them.

---

model form, it could put false information on the form and be immune from TILA liability. To state the argument is to defeat it.

Likewise, we reject Heard Chevrolet's contention that Plaintiff's TILA claim fails because Plaintiff cannot demonstrate reliance on its misrepresentations. <u>See</u> <u>Charles v. Krauss Co., Ltd.</u>, 572 F.2d 544, 546 (5th Cir. 1978) ("[T]he basis of [TILA] liability is rather failure to disclose information required to be disclosed; there is no requirement that the plaintiff himself be deceived in order to sue in the public interest." (quotations omitted)).

14

The binding precedent of this circuit requires that a defendant creditor demonstrate reliance upon FRB regulations and commentaries before it can successfully invoke TILA's "good faith" defense.  See McGowan v. Credit Ctr., Inc., 546 F.2d 73, 77 (5th Cir. 1977); Jones v. Community Loan & Inv. Corp., 544 F.2d 1228, 1232 (5th Cir. 1976).[8]  Thus, we have held that a defendant creditor is barred from relying upon TILA's "good faith" defense where it makes a loan prior to the date of the FRB regulation used to support that defense.  See McGowan, 546 F.2d at 77; Jones, 544 F.2d at 1232.[9]  In addition, our interpretation of the limits of the "good faith" defense is consistent with our sister circuit's interpretation of our shared binding precedent.  See Green v. Levis Motors, Inc., 179 F.3d 286, 292 (5th

---

[8]In Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

[9]In Jones, three different creditors excluded their loan fees from the "Amount Financed" and included them as part of the "Finance Charge" in making loans to three different borrowers.  See Jones 544 F.2d at 1230-32.  The creditors attempted to invoke 15 U.S.C. § 1640(f), the "good faith" defense, claiming that an FRB amended regulation permitted the dealerships to make disclosures like the ones in question.  See id.  The two creditors, who made their loans prior to the date of the FRB's amended regulation, were unable to rely on TILA's "good faith" defense.  The third creditor, who made its loan after the FRB's amended regulation, could avail itself of the "good faith" defense only if it could prove that it actually relied upon the FRB's amendment.  See id. at 1232.

This Court reaffirmed the Jones analysis in McGowan, 546 F.2d at 77 ("The defendants' loan to McGowan was made on June 8, 1973, prior to the date on which the Board issued 12 C.F.R. § 226.819 (1969).  Therefore, they are not protected under Section 1640(f) by the amendatory regulation.").  While the commentaries are relevant in our review of TILA's statutory language, they cannot be used to demonstrate the "good faith" defense in a transaction prior to their existence.

15

Cir. 1999) (citing <u>McGowan</u> and <u>Jones</u>) ("Binding Fifth Circuit precedent holds that a party cannot act 'in good faith in conformity with' a regulation or interpretation that does not exist at the time of the disputed act."). Defendant Heard Chevrolet's "good faith" defense thus fails because both FRB commentaries did not exist at the time of Jones's transaction with Heard Chevrolet.[10]

## IV. CONCLUSION

For the above reasons, we reverse and vacate the district court's order, dated August 5, 1998, granting summary judgment for Defendant Heard Chevrolet on Plaintiff Jones's claims under the TILA and Regulation Z, and remand this case for further proceedings consistent with this opinion.

**REVERSED, VACATED, and REMANDED.**

---

[10]The district court has not yet ruled on the class certification motion. Certain dates are potentially relevant to the "commonality" and "typicality" requirements for class certification. <u>See</u> Fed. R. Civ. P. 23(a)(1)-(2). Plaintiff Jones executed her RIC prior to the promulgation of the FRB's Proposed Commentary and Revised Commentary and may possibly differ in this respect from those members of the putative class who executed their RICs after the FRB issued its commentaries. Additionally, in the class certification motion, Plaintiff Jones defines the relevant class: "For purposes of Count II, the TILA claim, the class includes anyone whose retail installment contract is dated within one year prior to the filing of this action." However, Plaintiff Jones's action was filed on April 23, 1996, and thus her RIC, dated February 27, 1995, is not within one year of that filing date. These observations are made so that the district court and the parties may address them when the class certification motion is considered.