# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2783

_____

Correy Peters, on behalf of himself           *
and all others similarly situated,

                                              *

              Appellant,                      *

                                              *   Appeal from the United States
       v.                                     *   District Court for the
                                              *   District of Minnesota.

Jim Lupient Oldsmobile Co.,                   *
a Minnesota corporation,                      *

                                              *

              Appellee.                       *

_____

Submitted:  June 16, 2000
    Filed:  August 11, 2000

_____

Before MURPHY, HEANEY, and MAGILL, Circuit Judges.

_____

MAGILL, Circuit Judge.

Correy Peters filed suit against Jim Lupient Oldsmobile, Inc. (Lupient) alleging violations of the Truth in Lending Act (TILA) and Minnesota state laws. The district court[1] granted Lupient's motion for summary judgment on the TILA claim and dismissed the state law claims without prejudice. Peters only appeals the TILA claim.

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota.

We AFFIRM.

On April 25, 1997, Peters bought a 1989 Ford Probe from Terry Rook, a used car salesman for Lupient. Along with the car, Rook sold Peters credit life and disability insurance for premiums of $65.82 and $348.82, respectively. Peters stated he "had no problem with" the premiums. These premiums were paid to American National Insurance Co., which then paid $183.30 in commissions to Lupient and Rook. Peters's purchase was financed through TCF Financial Services, Inc. (TCF). TCF reported both premiums on the contract , however, the payment of premiums back to Lupient was not disclosed. TCF repossessed the automobile in 1998 after Peters stopped making payments.

Rather than disclose that commissions were being paid to Lupient on the insurance policies, the contract listed the total amount of the premiums as amounts paid to third parties on Peters behalf. All of our sister circuits that have examined whether the retention by a car dealer of any amount of a fee that is purportedly being paid to a third party is a violation of TILA, 15 U.S.C. § 1638(a)(2)(B)(iii), have answered in the affirmative. See Jones v. Bill Heard Chevrolet, Inc., — F.3d — (11th Cir. 2000) (finding failure to reveal retention by a car dealer of part of the charge for an extended warranty violated § 1638(a)(2)(B)(iii)); Green v. Levis Motors, Inc., 179 F.3d 286, 294 (5th Cir. 1999) (finding failure to reveal retention by a car dealer of part of the licensing fee violated § 1638(a)(2)(B)(iii)); Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.2d 283, 285 (7th Cir. 1997) (finding failure to reveal retention by a car dealer of part of the charge for an extended warranty violated § 1638(a)(2)(B)(iii)). As this issue was not fully briefed by the parties and the issue of damages fully resolves this suit, we decline to address whether Lupient violated the disclosure requirements of § 1638(a)(2)(B)(iii).

Peters concedes that the only remedy for failing to make this type of disclosure as required by § 1638(a)(2)(B)(iii) is actual damages. See 15 U.S.C. § 1640 (stating

statutory damages are only available for violations of § 1638(a)(2) in those cases where the amount financed was not disclosed). Peters alleges he suffered actual damages in the form of the commission paid to Lupient. Actual damages are traditionally defined as "an amount awarded to a complainant to compensate for a proven injury or loss." Black's Law Dictionary 394 (7th ed. 1999) (emphasis added). No circuit has examined what constitutes actual damages under § 1640, however, the reported district court cases have held the plaintiff must show a real loss or injury caused by the defendant. See, e.g., Cirone-Shadow v. Union Nissan of Waukegan, 955 F.Supp. 938, 943 (N.D. Ill. 1997); Barlow v. Evans, 992 F.Supp. 1299, 1309-10 (M.D. Ala. 1997). This court will apply the traditional definition to the term actual damages as it is used in § 1640, and require that a plaintiff prove an injury or loss.

In order to establish these actual damages, courts have required the plaintiff to show the TILA violation was the proximate cause of any actual damages. See Cirone-Shadow, 955 F.Supp. at 943. In order to show causation, a plaintiff must show that: (1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price. See Anderson v. Rizza Chevrolet, Inc., 9 F.Supp.2d 908, 913 (N.D. Ill. 1998). Peters does not contest that this is the proper analysis for determining an actual damages recovery.

Peters fails to meet the fourth element of this analysis. The record reveals no evidence that Peters would have received a lower premium on the two insurance policies from any other insurance provider or that he suffered any actual damages. Having failed to present any such evidence, Peters cannot prove causation and thus suffered no actual damages. As the only remedy for a violation of § 1638(a)(2)(B)(iii) is actual damages and Peters cannot show any actual damages, the TILA claim must fail.

For the foregoing reasons, we affirm the district court.

HEANEY, Circuit Judge, dissenting.

This is an important case, as it concerns whether consumers have a remedy when merchants mislead them about where their money is going. Correy Peters had a right to know that nearly half of his insurance payment went to the car dealer rather than the insurer. He must have a remedy as well.

Of the $414.64 that Peters paid Lupient for credit life and disability insurance, only $231.34--less than 60%--was actually paid to the insurer for Peters' premium. The remainder was returned to Lupient as a commission. Nevertheless, Lupient represented to Peters that the entire amount would be paid to the insurer on his behalf. Through this surreptitious payment scheme, Lupient has committed fraud and violated TILA. See Gibson v. Bob Watson Chevrolet-Geo, Inc., 112 F.3d 283, 285-87 (7th Cir. 1997).

The majority relies on Anderson v. Rizza Chevrolet, Inc., 9 F. Supp.2d 908, 913 (N.D. Ill. 1998), for the proposition that in order to prove damage, Peters must show he would have sought a lower price on the service and could have obtained one. The majority incorrectly states that Peters concedes that Anderson provides the proper framework for determining actual damages. While Peters cites Anderson's analysis in his brief, he argues it is inapplicable and that he should not be required to show he could have obtained a better deal on the insurance from a different source. Peters does not concede to Anderson's analysis simply by citing it. Moreover, Anderson was wrongly decided because it is inconsistent with the Seventh Circuit's decision in Gibson.

In Gibson, Judge Richard Posner made it crystal clear that a TILA plaintiff need not show he would have sought and could have obtained a lower price on the dealer-offered service in order to state a claim. See Gibson, 112 F.3d at 287. The plaintiff need only allege that the dealer's disclosure statement misrepresented that the dealer

was applying the full payment toward the service when in actuality the dealer was keeping a substantial portion of the payment for itself. To put the matter simply, a dealer violates TILA and harms the consumer when it fails to disclose it retained a part of the consumer's payment as a commission:

> The consumer would have a greater incentive to shop around for [services], rather than take the one offered by the dealer, if he realized that the dealer was charging . . . a "commission," and apparently a very sizable one, for its efforts in procuring the [service] from a third party. Or the consumer might be more prone to haggle . . . [o]r he might go to another dealer in search of lower mark-ups on third-party charges.

Id. at 286.

A deceptive business practice, in and of itself, inflicts damage upon the consumer because it limits the consumer's ability to make informed choices. Thus, granting summary judgment in favor of Lupient on the ground that Peters has not been harmed was improper. See Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356, 1363 n.7 (11th Cir. 2000) (recognizing that TILA liability is based on misrepresentation, not detrimental reliance upon that misrepresentation).

Having established that Peters was harmed by Lupient's conduct, the question remains how to measure his damage. TILA is a remedial statute, enacted in part "to protect the consumer against inaccurate and unfair credit billing," 15 U.S.C. § 1601(a) (2000), and should be interpreted broadly to effectuate its stated purpose. A number of reported decisions support the proposition that actual damages in TILA claims may be measured by the amount of the violator's misrepresentation. See In Re Russell, 72 B.R. 855, 863 (Bankr. E.D. Pa. 1987); see also In Re Murray, 239 B.R. 728, 734 (Bankr. E.D. Pa. 1999) (determining TILA violation triggers actual damages for amount of improperly disclosed charges); cf. Lopez v. Orlor, Inc., 176 F.R.D. 35, 40 (D. Conn. 1997) (certifying TILA plaintiffs as class for analysis of actual damages despite no

showing by class that it could have obtained similar insurance for less than insurance sold by car dealership at inflated price).

These decisions accurately reflect the actual harm the consumer suffers as a result of the dealer's misrepresentation. In this case, the only evidence before the district court on this point was that Lupient received $183.30 of Peters' insurance payment as its commission. Absent further evidence, judgment should be entered for Peters in that amount.

Because the majority's opinion is inconsistent with the Truth in Lending Act and with the decisions of the Seventh and Eleventh Circuits, I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.