**Louis R. VALLIES, Individually and on behalf of all similarly situated vehicle buyers, Appellant**

v.

**SKY BANK, an Ohio bank, licensed to do business in the Commonwealth of Pennsylvania.**

No. 08–4160.

United States Court of Appeals, Third Circuit.

Argued Sept. 9, 2009.

Filed: Dec. 31, 2009.

Erin M. Brady, Esquire (Argued), Michael P. Malakoff, Esquire, Malakoff & Brady, P.C., Pittsburgh, PA, for Appellant.

Martin C. Bryce, Jr., Esquire (Argued), Alan S. Kaplinsky, Esquire, Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Appellee.

Matthew A. Brinegar, Esquire, Center for Responsible Lending, Washington, D.C., for Amici Curiae–Appellant, Center for Responsible Lending, National Consumer Law Center, National Association of Consumer Advocates.

Jan T. Chilton, Esquire, Severson & Werson, San Francisco, CA, for Amici Curiae–Appellee, American Bankers Association, American Financial Services Association, Association of Consumer Vehicle Lessors, Chamber of Commerce of the United States of America, Consumer Bankers Association, Consumer Mortgage Coalition, Financial Services Roundtable,

Mortgage Bankers Association, Pennsylvania Bankers Association.

Before: SCIRICA, Chief Judge, RENDELL and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

In this putative class action, the sole issue presented by this appeal is whether a plaintiff must prove detrimental reliance in order to recover actual damages sustained because of a disclosure violation under § 1640(a)[1] of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–67. The District Court, following persuasive authority from our sister courts of appeals, concluded that detrimental reliance was required, and granted summary judgment for defendant because plaintiff failed to plead and could not prove detrimental reliance. We will affirm.

## I.

Louis Vallies brought a putative class action on behalf of consumers who had obtained loans from Sky Bank to finance purchases of motor vehicles,[2] claiming Sky Bank violated TILA disclosure requirements, specifically 12 C.F.R. § 226.4(d).[3]

Vallies and Sky Bank had entered into a Loan Note and Security Agreement, which financed an automobile and other items,

including a premium of $395 for Guaranteed Auto Protection ("GAP"), a form of debt cancellation insurance covering any loan deficiency which may remain in the event property insurance was insufficient to cover complete property loss. This charge was not calculated into the "finance charge" as required by TILA. In addition, instead of itemizing the GAP premium individually, the loan agreement combined it with a $1395 service contract charge, and disclosed the two generally as $1790 to be paid to National Auto, the service contract seller. At the same time, Vallies also signed the GAP Waiver Agreement with the automobile dealer, Phil Fitts Ford, which contained the statements required by TILA. Sky Bank was not a party to the GAP Waiver Agreement.

The District Court initially granted Sky Bank's motion to dismiss for failure to state a claim, holding that Sky Bank did not violate TILA because the necessary disclosures had been made to Vallies—not by Sky Bank, but by the automobile dealer Phil Fitts Ford, a third party. Alternatively, the District Court concluded that under TILA, each creditor is not required to make all relevant disclosures. We reversed and remanded, holding that "the creditor, and the creditor alone, is required to disclose ... required information." *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir.2006). On remand, Sky Bank moved for summary judgment, asserting

---

**1.** 15 U.S.C. § 1640(a).

**2.** The putative class allegedly includes tens of thousands of consumers who financed their purchases of motor vehicles with loans from Sky Bank.

**3.** TILA's rules are implemented through Regulation Z, 12 C.F.R. Pt. 226, issued by the Board of Governors of the Federal Reserve System, pursuant to 15 U.S.C. § 1604. Regulation Z compels the creditor to disclose "[t]he items required by § 226.4(d) in order

to exclude certain insurance premiums and debt cancellation fees from the finance charge." 12 C.F.R. § 226.18(n). For voluntary debt cancellation fees, these requirements are: "(A) The debt cancellation agreement or coverage is not required, and this fact is disclosed in writing; (B) The fee or premium for the initial term of coverage is disclosed....; (C) The consumer signs or initials an affirmative written request for coverage after receiving the disclosures...." 12 C.F.R. § 226.4(d)(3)(i).

that it fulfilled its TILA obligations through an undisclosed agent. After the District Court denied summary judgment, the parties settled Vallies's statutory damage claims under 15 U.S.C. § 1640(a)(2) for the maximum statutory amount of $501,000. The District Court certified a class exclusively for settlement purposes and approved the settlement.

The settlement, however, explicitly did not cover Vallies's actual damage claims under 15 U.S.C. § 1640(a)(1). Sky Bank moved for summary judgment on these claims, arguing that Vallies cannot recover actual damages because he failed to plead and cannot prove detrimental reliance. The District Court held that to recover actual damages, Vallies must show "(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price." Mem. Order at 10. Finding that Vallies "got all of the required information

and voluntarily elected to incur the debt cancellation insurance when he purchased his vehicle," the District Court concluded he could not satisfy the third or fourth element recited, and granted Sky Bank's motion for summary judgment. *Id.* Vallies now appeals.[4]

## II.

This case presents a question of statutory interpretation, and "[o]ur review of questions of statutory interpretation is plenary." *DIRECTV Inc. v. Seijas,* 508 F.3d 123, 125 (3d Cir.2007). Although we have not had an opportunity to examine this issue, we have previously noted that "[s]everal courts have held that detrimental reliance is an element of establishing actual damages under TILA." *In re Cmty. Bank of N. Va.,* 418 F.3d 277, 302 n. 20 (3d Cir.2005). In fact, every court of appeals that has spoken on this issue has required a showing of detrimental reliance.[5] Most district courts are in accord.[6] Even Val-

---

**4.** The District Court exercised jurisdiction under 18 U.S.C. § 1331 and 15 U.S.C. § 1640(e). We have appellate jurisdiction under 28 U.S.C. § 1291.

**5.** *See United States v. Petroff–Kline,* 557 F.3d 285, 297 (6th Cir.2009) ("[A]ctual damages require a showing of detrimental reliance."); *McDonald v. Checks–N–Advance, Inc. (In re Ferrell),* 539 F.3d 1186, 1192 (9th Cir.2008) (finding no valid basis to overturn the rule requiring a showing of detrimental reliance to establish actual damages); *Gold Country Lenders v. Smith (In re Smith),* 289 F.3d 1155, 1157 (9th Cir.2002) ("We join with other circuits and hold that in order to receive actual damages for a TILA violation ... a borrower must establish detrimental reliance."); *Turner v. Beneficial Corp.,* 242 F.3d 1023, 1028 (11th Cir.2001) (en banc) ("We hold that detrimental reliance is an element of a TILA claim for actual damages...."); *Perrone v. Gen. Motors Acceptance Corp.,* 232 F.3d 433, 434–40 (5th Cir.2000) (holding that detrimental reliance is an element of a claim for actual damages and rejecting numerous arguments to the con-

trary); *Stout v. J.D. Byrider,* 228 F.3d 709, 718 (6th Cir.2000) (affirming the denial of class certification based on the need for individualized assessment of whether "each putative class member relied upon false representations or failures to disclose"); *Peters v. Jim Lupient Oldsmobile Co.,* 220 F.3d 915, 917 (8th Cir.2000) (requiring a showing of proximate causation and adopting a four-prong reliance test for establishing actual damages); *Bizier v. Globe Fin. Servs., Inc.,* 654 F.2d 1, 4 (1st Cir.1981) (noting in dicta the need to show causation for an award of actual damages "in addition to a threshold showing of a violation of a TILA requirement").

**6.** *See e.g., Warburton v. Foxtons, Inc.,* No. 04–2474, 2005 WL 1398512, at *9–10 (D.N.J. June 13, 2005); *Nevarez v. O'Connor Chevrolet, Inc.,* 303 F.Supp.2d 927, 934 (N.D.Ill. 2004); *In re Currency Conversion Fee Antitrust Litig.,* 265 F.Supp.2d 385 (S.D.N.Y.2003); *Cannon v. Cherry Hill Toyota, Inc.,* 161 F.Supp.2d 362 (D.N.J.2001); *Anderson v. Rizza Chevrolet, Inc.,* 9 F.Supp.2d 908, 913–14 (N.D.Ill.1998); *Brister v. All Star Chevrolet,*

lies concedes the great weight of authority favors the detrimental reliance standard. Accordingly, the core theme underlying Vallies's numerous arguments is that the weight of authority is wrong. In a thorough and well-reasoned opinion, the District Court rejected Vallies's challenges, correctly holding that a showing of detrimental reliance is necessary to recover actual damages for TILA disclosure violations.

### A.

The Truth in Lending Act provides a range of remedies to achieve its goals. First, it authorizes the Federal Trade Commission as its overall enforcement agency, 15 U.S.C. § 1607(c), and provides other federal agencies with enforcement power over certain categories of lenders, 15 U.S.C. § 1607(a). The enforcement agencies are authorized to remediate unlawful finance charges by requiring adjustments of consumers' accounts. 15 U.S.C. § 1607(e)(1). Second, TILA imposes criminal liability for knowing and willful violations. 15 U.S.C. § 1611. Finally, TILA creates a private cause of action for actual damages, 15 U.S.C. § 1640(a)(1), and also for statutory damages, 15 U.S.C. § 1640(a)(2). For class action suits arising out of the same TILA violation, Congress capped the recovery of statutory damages to the lesser of $500,000 or 1% of the defendant's net worth. 15 U.S.C. § 1640(a)(2)(B). As the Court of Appeals

for the Eleventh Circuit observed, "[u]nder this regime, statutory damages provide at least a partial remedy for all material TILA violations; however, actual damages ensure that consumers who have suffered actual harm due to a lender's faulty disclosures can be fully compensated...." *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1026 (11th Cir.2001) (en banc). As noted, the parties here settled the statutory damage claims under § 1640(a)(2) for the maximum statutory amount, and the putative class is now seeking actual damages under § 1640(a)(1).

"[E]very exercise of statutory interpretation begins with an examination of the plain language of the statute." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir.2001). The statute here provides in part:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title, subsection (f) or (g) of section 1641 of this title, or part D or E of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)
>
> > (A) (i) in the case of an individual action twice the amount of any fi-

*Inc.*, 986 F.Supp. 1003, 1008 (E.D.La.1997); *Barlow v. Evans*, 992 F.Supp. 1299, 1301 (M.D.Ala.1997); *Cirone–Shadow v. Union Nissan*, 955 F.Supp. 938, 943 (N.D.Ill.1997); *Wiley v. Earl's Pawn & Jewelry, Inc.*, 950 F.Supp. 1108, 1114–15 (S.D.Ala.1997); *Adiel v. Chase Fed. Sav. & Loan Ass'n*, 630 F.Supp. 131, 133–35 (S.D.Fla.1986), *aff'd*, 810 F.2d 1051 (11th Cir.1987); *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 12–13 (E.D.Mich.1976). *But see Lopez v. Orlor*, 176 F.R.D. 35, 40 (D.Conn. 1997) (granting class certification and reject-

ing the argument that TILA plaintiffs cannot recover actual damages *unless they could have gotten more favorable terms elsewhere*); *Sutliff v. County Sav. & Loan Co.*, 533 F.Supp. 1307, 1313 (N.D.Ohio 1982) (measuring actual damages to be the difference between the improperly increased interest rate and the original interest rate); *In re Russell*, 72 B.R. 855, 857 (Bankr.E.D.Pa.1987) (concluding that actual damages are available for "substantial" TILA violations without the need to prove detrimental reliance).

nance charge in connection with the transaction, (ii) in the case of an individual action relating to a consumer lease under part E of this subchapter, 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000, or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor;

(3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court; and

(4) in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material.

In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional. . . .

15 U.S.C. § 1640(a). The Act, therefore, provides for different forms of compensatory damages—actual damages under § 1640(a)(1), and statutory damages for individuals under § 1640(a)(2)(A) and for class actions under § 1640(a)(2)(B). Actual damages are treated differently from statutory damages and have their own definition. The definition of the term "actual damages" is "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses." *Black's Law Dictionary* 445 (9th ed.2009). Coupled with the phrase "sustained by such person as a result of the failure," the statute "links the loss to the failure to disclose." *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 436 (5th Cir.2000); *see also Peters v. Jim Lupient Oldsmobile Co.*, 220 F.3d 915, 916–17 (8th Cir.2000) (applying the traditional definition of the term "actual damages" to require that plaintiff proves an injury or loss). The plain meaning of § 1640(a) requires causation to recover actual damages. In the context of TILA disclosure violations, a creditor's failure to properly disclose must cause actual damages; that is, without detrimental reliance on faulty disclosures (or no disclosure), there is no loss (or actual damage). *See, e.g., Gold Country Lenders v. Smith (In re Smith)*, 289 F.3d 1155, 1157 (9th Cir.2002) (citing dictionary definition of "actual damages" to conclude that a borrower must establish detrimental reliance); *Turner*, 242 F.3d at 1028 (finding that the statute's language indicates drafters' intention that plaintiffs must demonstrate detrimental reliance to recover actual damages).

■ Some commentators have noted that under a detrimental reliance standard, actual damages for TILA disclosure violations may be difficult to prove.[7] Furthermore, detrimental reliance may create obstacles for class certification because of the individualized fact-specific nature of the reliance inquiry. *See, e.g., Perrone*, 232 F.3d at 440 (denying class certification "[s]ince individual reliance is necessary to prove actual damages"); *see generally* Kelley & Ropiequet, *supra* note 7. But the requirements of proving actual damages are dictated by TILA's remedial structure. By providing for statutory and actual damages, the statute achieves its dual purpose of deterrence and compensation. The compensatory remedy of actual damages is permitted only in cases where the violation caused harm—where harm was "sustained by [the consumer] as a result of" the violation. 15 U.S.C. § 1640(a)(1). Without detrimental reliance, only statutory damages are available.

### B.

■ Because the statutory language of § 1640(a) is unambiguous we need not look to legislative history to ascertain the meaning of the statute. Nonetheless, the legislative history of TILA provides support for the necessity to establish detrimental reliance to recover actual damages:[8]

> Section 130(a) of TILA allows a consumer to recover both actual and statutory damages in connection with TILA violations. However, statutory damages are provided in TILA because actual damages, which require proof that the borrower suffered a loss in reliance upon the inaccurate disclosure, are extremely difficult to establish. To recover actual damages, consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure.

141 Cong. Rec. 26567, 26576 (1995) (statement of Rep. McCollum, co-author of legislation);[9] *see also* H.R.Rep. No. 104–193, at 99 (1995) ("To recover actual damages, consumers must show that they suffered a loss because they relied on an inaccurate or incomplete disclosure."). Statutory damages provide a compensatory remedy for TILA violations and also effectuate TILA's deterrence objectives. Actual damages compensate those consumers who have suffered actual harm because of the violations. Statutory damages "are provided in TILA because actual damages, which require proof that the [consumer]

---

7. *See generally* Eugene J. Kelley, Jr. & John L. Ropiequet, *Actual Damages Under the TILA: Collapsing Class Actions*, 55 Consumer Fin. L.Q. Rep. 200, 206 (Spring–Fall, 2001), *reprinted in Truth in Lending, 2008 Supplement* 469 (Alvin C. Harrell ed.2008); Ralph J. Rohner & Fred H. Miller, *Truth in Lending* 805 (2000).

8. The view of the government enforcement agencies charged with enforcing TILA, cited by Vallies, does not assist in interpreting § 1640(a) because the Joint Notice of Statement of Enforcement Policy, 44 Fed.Reg. 1222 (Jan. 4, 1979), deals solely with the regulatory enforcement provision under § 1607.

9. The legislative history cited refers to the Truth in Lending Amendments of 1995, Pub.L. No. 104–29, 109 Stat. 271 (Sept. 30, 1995). Congress was then contemplating increasing caps on statutory damages and creating different remedies for disclosure violations involving real property loans. This legislative history is relevant because at the time Congress necessarily considered the meaning of the then-existing remedies. *Barnes v. Cohen*, 749 F.2d 1009, 1015–16 (3d Cir.1984) ("[S]tatements as to legislative intent made by legislators subsequent to the enactment of a statute are ... entitled to consideration as an expert opinion concerning [the statute's] proper interpretation." (internal quotations and citations omitted)).

suffered a loss in reliance upon the inaccurate disclosure, are extremely difficult to establish." 141 Cong. Rec. 26758, 26898 (1995) (statement of Sen. Mack).[10] TILA's legislative history supports our conclusion that a showing of detrimental reliance is required to recover actual damages for TILA disclosure violations.

### C.

Vallies contends the reliance requirement is incompatible with other provisions in TILA, such as § 1607(e)(2)(d) that exempts remediation of finance charges where technical violations "have not misled or otherwise deceived the consumer." 15 U.S.C. § 1607(e)(2)(d). The absence of similar language in § 1640(a)(1), Vallies contends, demonstrates lack of Congressional intent to impose a reliance requirement on actual damages claims. But this ignores the fact that proof of "actual damages" under § 1640(a)(1) requires a showing of causation and actual loss. Congress's failure to include the above-quoted language in § 1640(a)(1) does not support a reasonable inference that it did not intend the detrimental reliance requirement.

Vallies also argues the detrimental reliance requirement conflicts with other language in § 1640. We disagree. It does not conflict with the clause in § 1640(a), instructing the courts to consider "the amount of any actual damages awarded" when setting statutory damages in a class action. 15 U.S.C. § 1640(a).[11] The statute creates no presumption that actual damages will be awarded—courts must consider actual damages *if* they are awarded. *See Perrone,* 232 F.3d 433, 439 n. 6 ("There is no logical connection between this statement [in § 1640(a) ] and the separate question of what formula to apply for measuring actual damages.").

Likewise, the detrimental reliance requirement does not conflict with § 1640(g), which provides consumers additional recoveries for post-judgment TILA violations. 15 U.S.C. § 1640(g).[12] Vallies's assertion that it is not possible for a consumer to rely on post-recovery TILA violations is incorrect. For example, a consumer, who previously recovered for harm caused by inaccurate bank statements, could rely on later inaccuracies, believing that a creditor had corrected the violation. Moreover, § 1640(g) does not distinguish between actual damages and statutory damages. Thus, additional re-

---

10. *See also Adiel v. Chase Fed. Sav. & Loan Ass'n,* 630 F.Supp. 131, 134 (S.D.Fla.1986) (noting the difficulty of establishing causation for actual damages was "the very impetus behind the legislative decision to construct a workable scheme of statutory damages"); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8, 12 (E.D.Mich.1976) ("[I]t seems likely that if actual damages could be computed by a simple formula, no statutory damage provision would have been necessary.").

11. The said clause of § 1640(a) states:

> In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor,

the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional.

12. Section 1640(g) states:

> The multiple failure to disclose to any person any information required under this part or part D or E of this subchapter to be disclosed in connection with a single account under an open end consumer credit plan, other single consumer credit sale, consumer loan, consumer lease, or other extension of consumer credit, shall entitle the person to a single recovery under this section but continued failure to disclose after a recovery has been granted shall give rise to rights to additional recoveries. This subsection does not bar any remedy permitted by section 1635 of this title.

coveries in the form of statutory damages might be available under § 1640(g) even where detrimental reliance cannot be proven.

Contrary to Vallies's arguments, the Regulatory Enforcement provision, 15 U.S.C. § 1607, and the Correction of Errors provision, 15 U.S.C. § 1640(b), do not identify a test for recovery of actual damages resulting from TILA disclosure violations. The Regulatory Enforcement provision authorizes relevant enforcement agencies to require creditors to adjust borrower accounts to remedy disclosure violations. But this grant of authority to seek restitutionary damages does not mean the same authority is given to private litigants. Furthermore, a creditor's liability is limited not only by regulatory discretion, but also by the statute itself in circumstances where the adjustment "would have a significantly adverse impact upon the safety or soundness of the creditor." 15 U.S.C. § 1607(e)(3)(A). No such limitation exists for private litigants under § 1640. Accordingly, the authority provided to the enforcing agencies under § 1607 cannot be equated with the rights of private litigants under § 1640.

Nor are there conflicts with the Correction of Errors provision. Section 1640(b) provides creditors with a safe harbor from liability for TILA disclosure violations when creditors choose to make adjustments to borrower accounts "to assure that the person will not be required to pay

an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower." 15 U.S.C. § 1640(b).[13] While this provision explicitly establishes a formula for account adjustments the creditors must make to avail themselves of safe-harbor protections, it does not turn actual damages into a restitution remedy. The Correction of Errors provision is not mandatory. It provides a shield from liability for disclosure violations to creditors who choose to correct them. Section 1640(b) shields creditors from both civil liability and regulatory enforcement. Accordingly, contrary to Vallies's arguments, the provision provides creditors an economic incentive to self-correct disclosure violations, even where actual damages might not be recoverable, because the enforcement agencies have authority under TILA to seek restitutionary adjustments. 15 U.S.C. § 1607(e).

### D.

Vallies's search for support in other statutes is unavailing because those statutes address different subject matters. The provisions of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691–1691f, which prohibits credit discrimination on the basis of race, color, religion, national origin, sex or marital status, or age, do not conflict with the detrimental reliance requirement. Section 1691e(a) provides that "[a]ny creditor who fails to comply with

---

13. Section 1640(b) states:

A creditor or assignee has no liability under this section or section 1607 of this title or section 1611 of this title for any failure to comply with any requirement imposed under this part or part E of this subchapter, if within sixty days after discovering an error, whether pursuant to a final written examination report or notice issued under section 1607(e)(1) of this title or through the creditor's or assignee's own procedures, and pri-

or to the institution of an action under this section or the receipt of written notice of the error from the obligor, the creditor or assignee notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay an amount in excess of the charge actually disclosed, or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

any requirement imposed under [ECOA] shall be liable to the aggrieved applicant for any actual damages sustained by such applicant." Although both ECOA's § 1691e(a) and TILA's § 1640(a)(1) employ "any actual damage" language, under ECOA, the measure of actual damages is harm caused by creditors' unlawful discriminatory behavior.

Similarly, the civil liability provisions of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693–1693r, do not conflict with requiring a showing of detrimental reliance to recover actual damages for TILA disclosure violations. EFTA employs the same language as § 1640(a)(1) to define liability for actual damages. 15 U.S.C. § 1693m(a)(1). But actual damages for violations of EFTA's "notice" provisions, 15 U.S.C. § 1693b(d)(3)(B),[14] which are analogous to violations of TILA disclosure provisions, require a showing of detrimental reliance. *See, e.g., Voeks v. Pilot Travel Ctrs.*, 560 F.Supp.2d 718, 725 (E.D.Wis.2008) ("To show actual damages under § 1693m(a)(1) a plaintiff must plead and prove detrimental reliance."); *Martz v. PNC Bank, N.A.*, No. Civ A 06–1075, 2007 WL 2343800, at *7–8 (W.D.Pa. Aug.15, 2007) (referencing cases requiring plaintiffs to establish causation of harm in the form of detrimental reliance to recover actual damages for violation of EFTA's notice requirements); *Brown v. Bank of Am., N.A.*, 457 F.Supp.2d 82, 90 (D.Mass.2006) (holding that detrimental reliance is required to recover actual damages for violation of EFTA's notice requirements); *Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D. 399, 408 (M.D.Fla.2004) (accepting the contention that every potential class member must prove detrimental reliance on erroneous fee postings to recover actual damages under EFTA). Vallies points to *Savrnoch v. First Am. Bankcard, Inc.*, No. 07–C–0241, 2007 WL 3171302 (E.D.Wis. Oct.26, 2007), where the court concluded reliance

---

14. Section 1693b(d)(3) states:

(A) In general
The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of—
(i) the fact that a fee is imposed by such operator for providing the service; and
(ii) the amount of any such fee.
(B) Notice requirements
(i) On the machine
The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
(ii) On the screen
The notice required under clauses (i) and (ii) of subparagraph (A) with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.
(C) Prohibition on fees not properly disclosed and explicitly assumed by consumer
No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—
(i) the consumer receives such notice in accordance with subparagraph (B); and
(ii) the consumer elects to continue in the manner necessary to effect the transaction after receiving such notice.

was not required to obtain damages "for a violation of the EFTA's prohibition on fees not properly disclosed, § 1693b(d)(3)(C)." *Id.* at *3. But *Savrnoch* explicitly agreed "that the plain language of § 1693m(a)(1) requires that [Plaintiff] show causation of harm through detrimental reliance when a plaintiff claims a violation of the EFTA's notice provisions, § 1693b(d)(3)(B)." *Id.* It then drew a "distinction between § 1693b(d)(3)(C), a statutory provision prohibiting the imposition of fees, and § 1693b(d)(3)(B), a statutory provision requiring proper notice," *id.* at *3, concluding "detrimental reliance is not needed to prove causation" for alleged violations of § 1693b(d)(3)(C). *Id.* at *4.[15] Because the distinction is inapplicable to TILA, *Savrnoch* is inapposite.

The Competitive Equality Banking Act of 1987 ("CEBA"), 12 U.S.C. § 3806, also does not conflict with the detrimental reliance requirement. CEBA does not define a disclosure requirement. It imposes a cap on the maximum interest rate that may be applied to an adjustable rate mortgage loan. 12 U.S.C. § 3806(a) ("Any adjustable rate mortgage loan originated by a creditor shall include a limitation on the maximum interest rate that may apply during the term of the mortgage loan."). Although CEBA requires that its violations be treated as TILA violations, 12 U.S.C. § 3806(c), it creates no inconsistency with the detrimental reliance requirement.[16]

▬ Finally, the Supreme Court's jurisprudence on Rule 10b5 under the Securities and Exchange Act of 1934 is inapposite to our analysis here. Proof of a material misrepresentation or omission may be sufficient to recover actual damages for Rule 10b–5 violations. *See Basic, Inc. v. Levinson,* 485 U.S. 224, 245–47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *Mills v. Elec. Auto–Lite,* 396 U.S. 375, 381–85, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). But Rule 10b–5 cases are distinguishable because they involve the unique role of securities markets. "Because most publicly available information is reflected in [the] market price, an investor's reliance on any public material misrepresentations, therefore, may be presumed for purposes of a Rule 10b–5 action." *Basic,* 485 U.S. at 247, 108 S.Ct. at 992; *see also Newton v. Merrill Lynch,* 259 F.3d 154, 174–77 (3d Cir.2001) (discussing when a presumption of reliance is proper in securities litigation). The reliance presumption under Rule 10b–5, carved out specifically for the unique nature of the securities markets, does not apply here, and the District Court correctly refused to extend it to § 1640(a).

### E.

There is also no inconsistency between the detrimental reliance requirement and other TILA provisions that govern the refund of prohibited prepayment penalties, 15 U.S.C. § 1615, provide a borrower a right to rescind certain credit transactions until all required material disclosures are delivered, 15 U.S.C. § 1635, and prohibit a variety of credit charges for certain mortgages, 15 U.S.C. § 1639. That these

---

**15.** This distinction, originally drawn by the same Magistrate Judge in *Mayotte v. Associated Bank, N.A.,* No. 07–C–0033, 2007 WL 2358646 (E.D.Wis. Aug.17, 2007) and *Voeks v. Wal–Mart Stores, Inc.,* No. 07–C–0030, 2007 WL 2358645 (E.D.Wis. Aug.17, 2007), has been rejected in *Voeks v. Pilot Travel Ctrs.,* 560 F.Supp.2d 718 (E.D.Wis.2008). Because the claims here are under TILA, and not EFTA, we make no judgment about EFTA's interpretation and express no opinion on whether the distinction is appropriate.

**16.** It appears Vallies did not raise the CEBA argument in the District Court, and it has therefore been waived.

TILA provisions specifically provide for rescission and restitution-type remedies does not imply that detrimental reliance is not required to recover actual damages for disclosure violations.[17]

We also reject Vallies's attempt to distinguish the violations claimed in this case from other disclosure violations of TILA. In his Amended Complaint, Vallies claimed that Sky Bank failed to disclose payments for GAP insurance, and to account for GAP coverage as a "finance charge." Therefore, Vallies plainly alleged a disclosure violation of TILA. Because TILA includes finance charges in the definition of "material disclosures," 15 U.S.C. § 1602(u), Vallies contends the recovery of actual damages for a "material" violation does not require a showing of detrimental reliance. But § 1640(a)(1) does not reference "material disclosures" and does not provide for distinct treatment of "material" violations for the purpose of calculating actual damages. Therefore, the definition of "material disclosures" in § 1602(u) has no relevance to § 1640(a)(1).

The sole authority potentially providing support for distinguishing between different categories of disclosure violations is *In re Russell*, 72 B.R. 855 (Bankr.E.D.Pa. 1987). *Russell* articulated the test for actual damages as one where there has been a "substantial violation" as opposed to a "technical violation." *Id.* at 863 ("We believe that actual damages arise whenever a disclosure statement contains a substantial violation, as opposed to a mere technical

violation, and that damages should be measured by the magnitude of the violation."). All courts since have rejected the *Russell* test. *See, e.g., Perrone*, 232 F.3d at 438 ("Such a test 'marks a radical departure from established Truth in Lending case law.'") (quoting D. Edwin Schmelzer, *Truth in Lending Developments in 1987: An Active Year on Several Fronts*, 43 Bus. Law. 1041, 1067–68 (1988)); *see also* Ralph J. Rohner & Fred H. Miller, *Truth in Lending* 806 n. 101 (2000) (raising practical problems with applying *Russell* and suggesting that if this decision is emulated, it may radically alter the TILA balance by broadly allowing reimbursement in a private action). *Russell* erred in its categorization of disclosure violations because nothing in the text of TILA supports judicial discretion in distinguishing "substantial" from "technical" violations. Similarly, nothing in TILA would allow us to treat "material disclosure" violations differently from violations of other TILA disclosure requirements for purposes of recovery of actual damages under § 1640(a)(1).

## F.

Vallies suggests the detrimental reliance requirement conflicts with our opinions in *Dzadovsky v. Lyons Ford Sales Co.*, 593 F.2d 538 (3d Cir.1979), and *Schnall v. Amboy Nat'l Bank*, 279 F.3d 205 (3d Cir. 2002). In *Dzadovsky*, we stated that a TILA violation is "presumed to injure a borrower by frustrating" TILA's purpose.

---

**17.** Notably, §§ 1615 and 1640 are unrelated because § 1640 defines civil liability for violations under Parts B, D, and E of the statute, while § 1615 is within Part A. Section 1635 provides the rescission remedy independently, explicitly, and in addition to civil damages under § 1640. 15 U.S.C. § 1635(g) ("[I]n addition to rescission the court may award relief under section 1640 ... for violations ... not relating to the right to rescind."); 15 U.S.C. § 1640(a) (defining civil liability for

"any creditor who fails to comply with any requirement [of TILA], including any requirement under section 1635"). Similarly, damages for the violation of § 1639 are defined independently and explicitly in § 1640 itself. 15 U.S.C. § 1640(a)(4) (stating that a creditor is liable "in the case of a failure to comply with any requirement under section 1639 ... [in] an amount equal to the sum of all finance charges and fees paid by the consumer....").

But *Dzadovsky* involved solely a claim for statutory damages. As noted, statutory damages do not require detrimental reliance.

In *Schnall*, we stated that "the TILA jurisprudence overwhelmingly rejects any reliance requirement." *Schnall*, 279 F.3d at 219.[18] Again, *Schnall* involved solely statutory damages. In fact, we noted that "[t]o recover actual damages, however, a plaintiff must obviously show that he suffered some financial harm that he would not have suffered...." *Id.* at 219 n. 10; *see also id.* at 215 n. 5 ("Reliance might be relevant ... for purposes of determining actual (in contrast to statutory) damages."). In sum, we have never rejected the requirement of detrimental reliance to recover actual damages for TILA disclosure violations.

### III.

This case does not present an occasion to evaluate which specific facts and circumstances constitute detrimental reliance because Vallies does not contend that he

**18.** In *Schnall*, we analyzed TILA to interpret former § 4310 of the Truth in Savings Act ("TISA"), 12 U.S.C. §§ 4301–13, which was closely modeled after TILA. 279 F.3d at 217.

**19.** We note that the District Court supported its grant of summary judgment by reciting a four-prong test from the Eighth Circuit: "a plaintiff must show that '(1) he read the TILA disclosure statement; (2) he understood the charges being disclosed; (3) had the disclosure statement been accurate, he would have sought a lower price; and (4) he would have obtained a lower price.'" Mem. Order at 10 (citing *Peters*, 220 F.3d at 917). No doubt a plaintiff who can satisfy the *Peters* test will successfully establish detrimental reliance. Although *Peters* has been influential in many courts, including those in our circuit, *e.g., Cannon v. Cherry Hill Toyota, Inc.*, 161 F.Supp.2d 362 (D.N.J.2001), others have used different language. For accuracy-of-disclosure violations like the ones presented here, other courts have held that detrimental reli-

relied on Sky Bank's disclosure violations. Because we find that a showing of detrimental reliance is required to recover actual damages for a TILA disclosure violation, and Vallies neither pled nor made such showing, the grant of summary judgment was proper on the claim for actual damages.[19]

ance can be shown where plaintiffs can establish that they would have foregone the loan completely had they received and reviewed an accurate disclosure. *See, e.g., United States v. Petroff–Kline*, 557 F.3d 285, 297 (6th Cir. 2009) ("To establish detrimental reliance, the debtor must demonstrate that he or she would either have received a better interest rate for the loans elsewhere or would have elected not to take the loan had the required information been available."); *McDonald v. Checks–N–Advance, Inc. (In re Ferrell)*, 539 F.3d 1186, 1192 (9th Cir.2008) ("The consumer must show that she 'would either have secured a better interest rate elsewhere, or foregone the loan completely.'" (quoting *Gold Country Lenders v. Smith (In re Smith)*, 289 F.3d at 1157)); *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000).

Nevertheless, plaintiff here does not assert and cannot prove he detrimentally relied. This case does not present the occasion to formulate factors that may constitute detrimental reliance.