SeTara TYSON, Plaintiff,

v.

**STERLING RENTAL, INC., d/b/a Car Source, Al Chami, and Rami Kamil, Defendants.**

Case No. 13–CV–13490.

United States District Court, E.D. Michigan, Southern Division.

Signed Jan. 20, 2015.

Amanda Marie Longendyke, Carl Schwartz, Ian B. Lyngklip, Lyngklip & Associates Consumer Law Center, Southfield, MI, for Plaintiff.

Ziyad P. Kased, Troy, MI, for Defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [33]

JUDITH E. LEVY, District Judge.

This is a consumer credit case. Pending is defendants Sterling Rental ("Car Source"), Al Chami, and Rami Kamil's motion for summary judgment. (Dkt. 33.) Pursuant to E.D. Mich. Local R. 7.1(f)(2), the Court will determine this motion without a hearing.

### I. Background

On August 10, 2013, plaintiff went to Car Source to purchase a vehicle. Plaintiff brought with her biweekly pay stubs from her job at McDonald's, a copy of her most recent bank statement, and a $1,200 check from the Family Independence Agency ("FIA") to assist with the purchase of the car.

Car Source's representative input plaintiff's information into its Credit Application Process System ("CAPS") and gave plaintiff a blank second page of the application to sign. Plaintiff signed the page. Car Source then submitted the application

to the Michigan Credit Acceptance Corporation ("MCAC"), Car Source's finance company. MCAC approved plaintiff for a loan. The retail installment contract plaintiff signed that day assigned the contract from Car Source, named as the "Creditor–Seller," to MCAC. Plaintiff then purchased a 2006 Chevrolet Cobalt, handing over the $1,200 FIA check to Car Source.

On August 12, 2013, Car Source called plaintiff and informed her that the deal had fallen through, and asked her to return to the dealership. Plaintiff further alleges that Car Source told her that the paperwork needed to be rewritten, and that Car Source needed to install a new GPS in the vehicle. When she arrived, Chami asked for her keys and drove the car to the service bay. Plaintiff then alleges that Chami and Kamil emptied her car and left her belongings at her feet. At that point, plaintiff was told she had to surrender her contract and pay an additional $1,500 to keep the car. Plaintiff states that she informed Chami and Kamil that she did not have another $1,500, at which point they refused to return the car and verbally abused her.

Defendants state the reason plaintiff was called back in and her car was taken is that she allegedly misrepresented her income on her application. The application stated that plaintiff's income was $1,817.38, when the documentation she provided showed an actual income of only $1,000 a month. Defendants state that they invited plaintiff back in to restructure her contract. The offer defendants claim to have made would have required an additional $1,500 payment, but would have reduced her payments by $100 a month.

Plaintiff brought suit against defendants on August 14, 2013. On August 20, 2013, defendants sent plaintiff a letter requesting she remove the car from their property. She has not done so.

Plaintiff amended her complaint on September 9, 2014. Plaintiff brings claims for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602(f) and regulation Z § 226.2(a)(17) against Car Source, violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* against Car Source, common law conversion against Car Source, statutory conversion against all defendants, violations of the Michigan Motor Vehicle Sales Finance Act, M.C.L. § 492.101 *et seq.,* Uniform Commercial Code ("UCC") Art. 9, M.C.L. § 440.9101 *et seq.,* and the Michigan Credit Reform Act, M.C.L. § 445.1851 *et seq.,* and for breach of contract and breach of warranty of title, each against Car Source.

Defendants filed their motion for summary judgment on October 31, 2014. Following a call with the Court regarding discovery issues, plaintiff's response date was moved to December 22, 2014. Plaintiff filed her response on that date. Defendants did not reply to the response. The motion is now ripe for consideration.

II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.,* 95 Fed.Appx. 132, 135 (6th Cir.2004) (citing *Skousen v. Brighton High Sch.,* 305 F.3d 520, 526 (6th Cir.2002)).

III. Analysis

A. Defense Counsel's Conduct

This is the third dispositive motion defendants have filed in this case, and the second the Court has addressed. The first motion was defendants' motion to dismiss (Dkt. 16), which the Court denied. (Dkt. 24.) In that motion, defense counsel revealed a significant lack of familiarity with the appropriate structure for a legal argument. Defense counsel opted to forego the accepted practice of making his argument in the brief in support of his motion to dismiss, as is required by the Local Rules of this District. *See* E.D. Mich. Local R. 7.1(d). Instead, he crafted "exhibits" that copied and pasted sentences from the complaint and asserted almost wholly without argument that those sentences did not meet the standard required for a motion to dismiss under Fed.R.Civ.P. 12(b)(6).

Defense counsel has now opted to follow a more traditional briefing format for this motion. This motion is based in large part on what counsel argues were admissions he extracted from plaintiff at her deposition.

"The purpose of a deposition is to memorialize testimony or to obtain information that can be used at trial or that eliminates the pursuit of issues or that inform decisions as to the future course of the litigation. One of the main purposes of the discovery rules, and the deposition rules in particular, is to elicit the *facts* before the trial and to memorialize witness testimony before the recollection of events fade...." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D.Va. 2011) (emphasis added).

The purpose of a deposition is not to repeatedly demand that a deponent, represented by counsel, demonstrate knowledge of the *law* underpinning her claims. Nor is the purpose of a deposition to demand that a deponent specifically assign the facts in her knowledge or possession to the legal claims she is making. Defense counsel repeatedly engaged in exchanges such as the following (defense counsel is the questioner, plaintiff is answering):

Q. Can you tell me in your own words the specific facts that led you to accuse Car Source of violating the Equal Credit Opportunity Act?

A. Can you explain to me what are you asking me again?

Q. You're suing Car Source for violating the Equal Credit Opportunity Act. Can you tell me in your own words any specific facts that led you to accuse Car Source of violation that act?

A. See, I'm not understanding what the act—I don't know the definition of the act, so I can't—

Q. So you don't know what you're suing them for?

A. Yes, I know what I'm suing them for, for spot delivery.

Q. But you're also suing them for violating the Equal Credit Opportunity Act.

A. Can you—

Q. If you don't know, that's okay. You can say you don't know.

A. I'm not understanding that definition. If you could break it down to me as far as to explain to me what you mean, I can give you a definition, but as far as telling me—not—not telling me the act or whatever, I don't understand the act.

Q. You don't understand the act?

A. Not at the moment.

(Dkt. 33–3 at 8–9.)

The same sort of exchange typifies defense counsel's inquiry into plaintiff's other claims.

Q. You say on paragraph 72, right under that, "Car Source has converted the

vehicle." What's your factual basis for that allegation?

[ ... ]

Q. Do you know what common law conversion is?

A. Can you explain it to me? Can you give me the definition?

Q. You're suing for common law conversion. If you don't know the answer, you can say no. Do you know what common law conversion is?

A. Not at the moment.

Q. Paragraph 73 on the next page says "Ms. Tyson suffered damages as a result of this conversion."

A. You just asked that.

Q. On page 8, No. 73, next page. If you don't know what conversion was, what damages did you suffer as a result of it?

(Dkt. 33–3 at 14–15.)

The deposition revealed what the vast majority of depositions would reveal if conducted in this manner: that lay plaintiffs or witnesses do not know or fully understand the legal theory of their cases. That understanding, however, is the role of their lawyers.

Defense counsel had the opportunity to elicit the facts necessary to move for summary judgment at plaintiff's deposition. Instead, counsel for defendants engaged in a line of questioning that ensured he could not prevail on this motion since the factual basis for the lawsuit was hardly touched on.

Coupled with defendants' frivolous motion to prevent the deposition of a named defendant because they felt plaintiff's complaint should be dismissed (Dkt. 36), defense counsel has shown a lack of understanding and an abuse of the discovery and deposition process that borders on sanctionable. Although the Court does not impose sanctions at this time, defense counsel is warned that the Court will not

hesitate to impose sanctions at plaintiff's request should this conduct continue.

The Court will now consider defendants' motion for summary judgment, disregarding any argument that plaintiff's lack of familiarity with the legal basis for her claims constitutes a lack of factual basis for her claims.

### B. Truth In Lending Act

Plaintiff describes the transaction in this case as a "spot delivery." "The practice of "spot delivery" occurs when a buyer and seller sign an installment sales contract for sale of a motor vehicle and the buyer takes delivery of the vehicle "on the spot," prior to the seller obtaining financing from an end lender." State of Michigan Department of Insurance and Financial Services, *Bulletin 2013–08–CF: In the Matter of Motor Vehicle Installment Sales: Practice of Spot Delivery,* at 1 (April 1, 2013).

Plaintiff alleges that, at the time of purchase, Car Source failed to adequately disclose the true price and annual percentage rate ("APR") of the vehicle, and that it had authority to possess the vehicle, in violation of TILA. (Dkt. 32 at 8.) Car Source argues that 1) spot delivery is not illegal absent some fraud or misrepresentation; 2) that MCAC, not Car Source, was the creditor for the purpose of the transaction; and 3) that a claim for violation of TILA cannot be maintained without payment of some finance charge and reliance on the lender's representation.

■ Assuming for the purposes of this motion that spot delivery transactions are not illegal "absent some independent showing of fraud or misrepresentation," *Rucker v. Sheehy Alexandria, Inc.,* 228 F.Supp.2d 711, 719 (E.D.Va.2002), plaintiff has made an independent showing of misrepresentation here. Other than cursory assertions that plaintiff has failed to show fraud or misrepresentation, Car Source does not

dispute the material facts as plaintiff has alleged them: on August 10, 2013, Car Source represented that the purchase price of the car, plaintiff's interest rate, and corresponding finance charges were set to be one amount. On August 12, 2013, Car Source requested plaintiff return to the dealership. When she returned, Car Source took her car from her, refusing to give it back unless she signed a different contract with a different purchase price, different interest rate and different corresponding finance charges.

With regard to the argument that Car Source was not a creditor for the purpose of the transaction, car dealers such as Car Source are considered creditors for the purposes of TILA liability. 15 U.S.C. § 1602(g)(2); 12 C.F.R. 226.2(a)(17)(i).

■ Plaintiff need not have paid a finance charge to maintain her TILA claim under 15 U.S.C. § 1638. Section 1638 governs transactions other than those under an open-end credit plan, such as this one, and liability is assessed under 15 U.S.C. § 1640(a)(1)–(3). Car Source cites *Anderson v. Frederick Ford Mercury, Inc.*, 694 F.Supp.2d 324 (D.Del.2010) to argue that statutory damages are only available where the plaintiff pays finance charges. *Id.* at 330. However, the *Anderson* plaintiff erroneously sought TILA damages in relation to the sale of a van under 15 U.S.C. § 1640(a)(4), which only applies to failures to comply with 15 U.S.C. § 1639, governing certain mortgage transactions. *Id.* The *Anderson* court analyzed plaintiff's request under that incorrectly invoked section of the liability statute, and found that plaintiff

could not recover damages, as that section specifically requires the payment of finance charges or fees. *Id.* Simply put, the *Anderson* court applied the wrong statute to that plaintiff's claim. Section (A)(2)(A)(iv) makes no mention of finance charges or fees, and the Court will not read an unwritten requirement into one section of the statute when the same requirement is explicitly referenced in another.

■ Plaintiff's TILA claim on a closed-end credit plan may be maintained absent detrimental reliance if it is for statutory, rather than actual, damages under 15 U.S.C. § 1640(a)(2)(A)(iv). *See also Vallies v. Sky Bank*, 591 F.3d 152, 158 (3d Cir.2009) ("Without detrimental reliance, only statutory damages are available [under TILA].") A claim for actual damages must be supported with a showing of detrimental reliance. *Stout v. J.D. Byrider*, 228 F.3d 709, 718 (6th Cir.2000). To the extent that Car Source attempts to argue otherwise in the case of statutory damages, it relies solely on cases concerning the need for detrimental reliance in claims for *actual* damages.[1]

Accordingly, the Court denies summary judgment on plaintiff's TILA claim.

### C. Equal Credit Opportunity Act

To the extent Car Source's argument for summary judgment on this claim consists of anything other than plaintiff's deposition testimony that she cannot define the legal standard for an ECOA claim, it cites two paragraphs from *Anderson*, 694 F.Supp.2d at 331. Car Source provides no actual argument and no explanation as to how

---

1. Plaintiff also addresses Car Source's assertion that she materially misrepresented her income in the TILA section of her brief. (Dkt. 41 at 16–17.) Although Car Source does not argue that her TILA claim should be dismissed on the grounds that she allegedly misrepresented her income, the Court agrees that

the TILA claim would survive even if plaintiff had done so. *See Purtle v. Eldridge Auto Sales, Inc.*, 91 F.3d 797, 801 (6th Cir.1996). The Court does not reach the issue of whether plaintiff misrepresented her income on her application.

that citation is dispositive in this case under this set of facts.

Accordingly, the Court will deny defendants' motion as to the ECOA count.

### D. Conversion

Defendants argue that plaintiff cannot maintain her claims for conversion because 1) defendants offered to return the car and 2) her conversion claim is barred by the economic loss doctrine.

■ "Conversion is any distinct act of dominion wrongfully exerted over another's personal property. It occurs at the point that such wrongful dominion is asserted." *Trail Clinic, P.C. v. Bloch,* 114 Mich.App. 700, 705, 319 N.W.2d 638 (1982). Statutory conversion is defined as "buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted." M.C.L. § 600.2919a(1)(b).

■ As plaintiff correctly argues, "when an actual conversion of chattels has taken place, the owner is under no obligation to receive them back, when tendered by the wrongdoer." *Crowley v. Detroit Garages,* 259 Mich. 170, 174, 243 N.W. 2 (1932). Defendants sent plaintiff a letter after suit was filed demanding she remove the car from their lot. (Dkt. 33–4 at 2.) However, the letter did not resolve the underlying issue surrounding defendants' initial retention of the car: their insistence that plaintiff owed them another $1,500 in order to take possession of the car.

The letter was less an offer to return the car than a threat to charge plaintiff twenty-five dollars a day for defendants' storage of her car after defendants took it from her. Further, plaintiff had previously been induced to come to defendants' lot

under one set of facts, then events evolved in an entirely different manner. Plaintiff had no obligation to retrieve the car, as defendants' "offer" to return it could readily have been perceived as simply another effort to collect the additional money they believed plaintiff owed them.

■ However, under Michigan law, the economic loss doctrine bars recovery for conversion when the underlying transaction is governed by a contract. *See Scarff Bros. v. Bischer Farms, Inc.,* 546 F.Supp.2d 473, 488 (E.D.Mich.2008) *aff'd in part, vacated in part on other grounds, remanded sub nom. Scarff Bros., Inc. v. Bischer Farms, Inc.,* 386 Fed.Appx. 518 (6th Cir.2010). "The economic loss doctrine, simply stated, provides that where a purchaser's expectations in a sale [governed by contract] are frustrated . . ., [her] remedy is said to be in contract alone, for [s]he has suffered only economic losses." *Neibarger v. Universal Cooperatives, Inc.,* 439 Mich. 512, 521, 486 N.W.2d 612 (1992) (internal quote marks and further citation omitted). This means that where a sale is governed by contract, the economic loss doctrine bars recovery under a corresponding tort action.

Plaintiff argues that Michigan law recognizes the tort of conversion as an "independent claim," but fails to cite any case law or statute in support of that contention. Accordingly, the Court dismisses plaintiff's conversion claims (Counts III through VI).

### E. Plaintiff's Other Claims

Defendants have moved for summary judgment on plaintiff's other claims, but cite only plaintiff's inability to state the legal basis for her claims at deposition as a reason for dismissal. The Court cannot dismiss an otherwise well-pled claim because the plaintiff was unfamiliar with the legal standard for her claim. The plaintiff is the master of the facts of her case, and

she retained a lawyer to handle the application of the relevant law to those facts.

IV. Conclusion

For the reasons stated above, it is hereby ordered that:

Defendants' motion for summary judgment (Dkt. 33) is GRANTED as to Counts III through VI (common law and statutory conversion) and DENIED as to all other counts.

IT IS SO ORDERED.